T.C. Memo. 1995-547


UNITED STATES TAX COURT


DAVID BRUCE MCMAHAN, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 13252-87.          Filed November 20, 1995.


David J. Fischer and Matthew D. Lerner, for petitioner.

Lyle B. Press and David Williams, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

FOLEY, Judge:  Respondent determined a deficiency of
$1,555,601 in petitioner's 1982 Federal income tax and an

addition to tax pursuant to section 6651(a)(1)[1] in the amount of $337,264

The issue in this case is whether petitioner, who relied on his employee to file an application for an extension of time to file his 1982 Federal income tax return, had reasonable cause for not filing his return in a timely manner.  We hold that petitioner did not establish reasonable cause and that the addition to tax for failure to file his return in a timely manner should apply.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Petitioner resided in Pelham Manor, New York, at the time he filed his petition.

Petitioner was a founding and general partner of McMahan, Brafman, Morgan & Co. (MBMC).  MBMC, a broker-dealer in Government securities and stock options, was organized as a limited partnership.  Prior to forming MBMC, petitioner conducted various business enterprises.  From 1966 to 1974, petitioner invested on behalf of clients in the options and convertible bond markets.  He then became the National Institutional Options Director for PaineWebber, Inc., and served in that capacity until July of 1976.  Following his tenure at PaineWebber, Inc., he was hired as a partner at Bear, Stearns & Co. in New York.  He

---

[1]All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

remained at Bear, Stearns & Co. until the summer of 1980, the year he founded MBMC.

James Russell, a lawyer with expertise in tax, estate, corporate, and investment matters, was a special limited partner in charge of investment banking at MBMC.[2]  Mr. Russell first met petitioner in the summer of 1977 when petitioner approached him for legal advice regarding an upcoming business deal.  In the fall of that year, Mr. Russell went into business as petitioner's partner in various investments relating to computer application programs and oil and gas exploration.

Mr. Russell's responsibilities at MBMC included handling petitioner's personal tax matters.  He prepared and filed petitioner's 1980 and 1981 Federal income tax returns and represented petitioner before the Internal Revenue Service (the Service) in connection with those returns.[3]

On April 14, 1983, Mr. Russell prepared and filed an application for an automatic extension of time to file petitioner's 1982 Federal income tax return.  He attached petitioner's check in the amount of $360,000, which represented Mr. Russell's estimate of petitioner's 1982 tax liability.  Mr. Russell advised petitioner that the extension request had been

---

[2]Mr. Russell received his LL.B. from Harvard Law School and his LL.M. in taxation from New York University School of Law.

[3]He also prepared petitioner's 1978 and 1979 tax returns.

filed and that the new deadline to file the return was August 15, 1983.

Toni-Ann Supino served as petitioner's executive manager and assistant. She managed petitioner's personal and business matters and was responsible for keeping petitioner informed about deadlines. Ms. Supino was aware of the August 15, 1983, deadline for filing petitioner's return and monitored the deadline pursuant to her standard office procedures. She recorded in her calendar this deadline and all of petitioner's other business and personal deadlines. In addition, she made an entry on the page of her calendar corresponding to a date several weeks prior to a deadline so that she could monitor the appropriate employees to ensure that the deadline was met.[4]

In May or June of 1983, the executive committee of MBMC made a decision to transfer responsibility for preparing the general partners' tax returns, including petitioner's, to Gerald Marcus, a partner at the accounting firm of Oppenheim, Appel, Dixon & Co. (OAD). Mr. Russell, however, was not relieved of his responsibility to file petitioner's return until mid-August, and documents relating to petitioner's return were not transferred from Mr. Russell to OAD until after the August 15, 1983, deadline.

---

[4]Her daily responsibilities were recorded in her "to-do" list. She rewrote this list each night, eliminating those tasks that had been accomplished and adding new responsibilities.

Beginning 2 to 3 weeks prior to August 15, 1983, Ms. Supino repeatedly reminded Mr. Russell about the upcoming deadline. Mr. Russell assured her each time that he would file the appropriate forms. During this time period, petitioner asked Mr. Russell whether the return was ready to be filed. Mr. Russell informed petitioner that it was not ready to be filed but that he believed the Service would grant a second extension. Petitioner was aware that such extensions were not automatic.

During the week prior to August 15, 1983, petitioner asked Mr. Russell about the status of his 1982 return. Mr. Russell told him that he had filed the second extension request. Mr. Russell also assured Ms. Supino that he had filed it, and she informed petitioner. After receiving these assurances, petitioner went on vacation. When he returned in September, however, he discovered that the second extension request had not been filed.

On March 14, 1984, OAD filed petitioner's 1982 individual income tax return. The return reported a tax liability of $86,252 and an overpayment of $273,748.[5] Petitioner filed an amended return dated May 1, 1984, that reported a net increase in taxable income of $399,364 and a corresponding new tax liability of $154,596. On February 12, 1987, respondent issued a notice of

---

[5]Petitioner had paid $360,000 with the application for the first extension. Since the total tax liability was only $86,252, the overpayment was calculated as follows: $360,000 - $86,252 = $273,748.

deficiency that determined an increase in taxable income as well as an addition to tax under section 6651(a)(1). The amount of the increase in taxable income was settled by a Stipulation of Settlement dated October 18, 1994. This settlement increased petitioner's taxable income by $1,536,047 and resulted in a revised tax liability of $924,111.

The parties have stipulated that the amount of the addition to tax under section 6651(a)(1), if it applies, is $141,028.

OPINION

Section 6651(a)(1) imposes an addition to tax for failure to file an income tax return by the due date, including extensions, unless it is shown that the failure is due to reasonable cause and not due to willful neglect. A failure to file in a timely manner is due to "reasonable cause" if the taxpayer exercised "ordinary business care and prudence" and was nevertheless unable to file the return within the time prescribed. Sec. 301.6651-1(c)(1), Proced. & Admin. Regs. The burden of proof is on the taxpayer. Rule 142(a); Ehrlich v. Commissioner, 31 T.C. 536, 540 (1958). The issue before this Court is whether petitioner's reliance on his attorney to file an extension request constitutes ordinary business care and prudence and thus reasonable cause.

I.   Petitioner Relied on Mr. Russell To File

We must first determine whether petitioner relied on Mr. Russell. We find that petitioner did so rely.

Mr. Russell was responsible for preparing and filing petitioner's 1982 income tax return. In May or June of 1983, MBMC decided to transfer the responsibility from Mr. Russell to OAD. Documents relating to the preparation of the return, however, were not transferred from him to OAD until after the August 15, 1983, deadline. There is no evidence that anyone other than Mr. Russell had responsibility for the return before that responsibility was assumed by OAD. Petitioner continued to ask Mr. Russell about the status of the return through mid-August, and Mr. Russell continued to assure petitioner and Ms. Supino that the extension request would be filed on time. Thus, we find that Mr. Russell had the responsibility through August 15, 1983, to file petitioner's return (or extension request).

Mr. Russell testified that he was not responsible for filing petitioner's return. His testimony was not credible. When he was questioned about the second extension request, he could not recall various details, including whether he had: (1) Been asked by petitioner to file a second extension request; (2) discussed a second extension request with petitioner; (3) prepared a second extension request; or (4) represented to petitioner that a second extension request had been filed. Thus, we attach little weight to his testimony regarding the extension requests and find that petitioner relied on Mr. Russell.

Respondent notes that, in May or June, MBMC decided to transfer responsibility for the return to OAD and argues that

petitioner consequently could not have relied on Mr. Russell to file it.  Respondent, however, ignores the fact that the decision to transfer responsibility was not executed until mid-August.[6] Thus, we find respondent's argument unpersuasive on this point.

II.  Reliance on an Agent To File Does Not Establish Reasonable Cause

Next we must determine whether petitioner's reliance on Mr. Russell to file petitioner's extension request constitutes reasonable cause.  We hold that such reliance does not constitute reasonable cause.

A taxpayer who files his return after the deadline cannot establish reasonable cause by proving that he relied on his attorney or accountant to file his return.  United States v. Boyle, 469 U.S. 241, 250 (1985); Estate of La Meres v. Commissioner, 98 T.C. 294, 315 (1992); Zabolotny v. Commissioner, 97 T.C. 385, 400 (1991), affd. in part and revd. in part 7 F.3d 774 (8th Cir. 1993); Boatman v. Commissioner, T.C. Memo. 1995-356.  In Boyle, the leading case on whether reliance on an agent constitutes reasonable cause, the executor of an estate relied on an attorney to file the estate's tax return.  The executor's attorney assured him that the return would be filed "in plenty of time".  When the executor learned that the return had not been filed in a timely manner, the executor argued that his reliance

---

[6]Petitioner did not rely on OAD to file the extension.

on the attorney constituted reasonable cause.  The Court rejected this argument and held for the United States.  <u>United States v. Boyle</u>, <u>supra</u> at 249-250.

Applying agency principles to the relationship between the taxpayer and the attorney, the Supreme Court observed:  "Congress has placed the burden of prompt filing on the executor, not on some agent or employee of the executor.  * * *  That the attorney, as the executor's agent, was expected to attend to the matter does not relieve the principal of his duty to comply with the statute."  <u>Id.</u> at 249-250.  A narrow exception exists where a taxpayer is physically incapacitated and thus unable to file. <u>Id.</u> at 248 n.6, 253 (Brennan, J., concurring); <u>Harbour v. Commissioner</u>, T.C. Memo. 1991-532.

Petitioner contends that there is a fundamental difference between filing a return and filing an extension request.  See <u>Fleming v. United States</u>, 648 F.2d 1122, 1127 (7th Cir. 1981) (Cudahy, J., dissenting).  He argues that, in the case of an individual income tax return, the taxpayer must sign the return before it can be filed.  See sec. 6061; sec. 1.6061-1(a), Income Tax Regs.[7]  By contrast, an extension request does not require the taxpayer to sign but rather provides, as an alternative, that

---

[7]Petitioner fails to acknowledge that a taxpayer's agent may sign the return where the taxpayer is physically unable to sign, absent from the United States for at least 60 days, or a nonresident alien required to file a Form 1040NR.  See secs. 1.6061-1(a), 1.6012-1(a)(5) and (b), Income Tax Regs.

the taxpayer's agent may sign.  See sec. 1.6081-1(b)(1), Income Tax Regs.

Petitioner reasons that underlying the holding in United States v. Boyle, supra, is a policy to impose the addition to tax only where the taxpayer is actively involved in the process of filing.  Because the regulations sanction delegation of the act of signing the extension request, petitioner concludes that they must also sanction delegation of the duty to file it.[8]

Petitioner's argument is not persuasive.  An agent's failure to file an extension request is tantamount to an agent's failure to file a return.  See Fleming v. United States, supra at 1127; cf. est, An Educational Corp. v. Commissioner, T.C. Memo. 1986-527.[9]  It would be anomalous to excuse a late return where the taxpayer asked his agent to file an extension request but not excuse a late return where the taxpayer asked his agent to file a return.  See Twin City Constr. Co. v. United States, 515 F. Supp. 767, 770 (D.N.D. 1981).  Thus, we reject petitioner's argument.

Petitioner also argues that reasonable cause should be found

---

[8]This argument was considered and rejected in Twin City Constr. Co. v. United States, 515 F. Supp. 767, 770 (D.N.D. 1981).  See also Fleming v. United States, 648 F.2d 1122 (7th Cir. 1981).

[9]We note that United States v. Boyle, 469 U.S. 241 (1985), has been applied where taxpayers have relied on agents to file extensions.  See Bergersen v. Commissioner, T.C. Memo. 1995-424; Scimeca v. United States, 735 F. Supp. 300 (N.D. Ill. 1990); Estate of Cox v. United States, 637 F. Supp. 1112 (S.D. Fla. 1986).

in this case because he was told by Mr. Russell that the extension request had been filed. While a taxpayer may establish reasonable cause by demonstrating that he relied on the tax advice of an expert, reliance on an agent to file a return does not establish reasonable cause. United States v. Boyle, supra at 250; Estate of La Meres v. Commissioner, supra at 315; Zabolotny v. Commissioner, supra at 400. The Supreme Court provided the following rationale for distinguishing between relying on an agent's expert advice and relying on an agent to file a return:

> When an accountant or attorney advises a taxpayer on a matter of tax law, such as whether a liability exists, it is reasonable for the taxpayer to rely on that advice. Most taxpayers are not competent to discern error in the substantive advice of an accountant or attorney. To require the taxpayer to challenge the attorney, to seek a "second opinion," or to try to monitor counsel on the provisions of the Code himself would nullify the very purpose of seeking the advice of a presumed expert in the first place. * * *

> By contrast, one does not have to be a tax expert to know that tax returns have fixed filing dates and that taxes must be paid when they are due. In short, tax returns imply deadlines. Reliance by a lay person on a lawyer is of course common; but that reliance cannot function as a substitute for compliance with an unambiguous statute. * * * [United States v. Boyle, supra at 251.]

In the present case Mr. Russell did not render an opinion on a matter of tax law. Petitioner did not need to conduct any research to ensure the extension request was filed before the deadline. He knew that August 15, 1983, was the deadline to either file the return or obtain an extension. He also knew that the second extension request had to be approved by the Service.

Petitioner was responsible for ensuring that the extension request and return were filed on time and must accept the consequences for the agent's failure to complete the task. Petitioner's reliance on Mr. Russell to file the extension request is no more a defense to the addition to tax than was the executor's reliance on his agent to file the return in <u>Boyle</u>. See <u>Fleming v. United States</u>, <u>supra</u> at 1125-1126; <u>Vocelle v. Commissioner</u>, T.C. Memo. 1968-5; <u>Scimeca v. United States</u>, 735 F. Supp. 300, 302 (N.D. Ill. 1990); <u>Estate of Cox v. United States</u>, 637 F. Supp. 1112, 1115 (S.D. Fla. 1986); <u>Sarto v. United States</u>, 563 F. Supp. 476, 478 (N.D. Cal. 1983).

This conclusion is supported by tax policy considerations. In our case, petitioner relied on Mr. Russell, whom he regarded as a "partner, a friend, and a trusted advisor", to file the extension request. When respondent determined an addition to tax for failure to file in a timely manner, however, petitioner blamed Mr. Russell for the late filing, and during the trial Mr. Russell could not recall any details relating to the second extension request. Our holding in this case places the incentives where they belong. Taxpayers are subject to the addition to tax if their returns are not filed on time and may seek reimbursement from their agents on grounds of malpractice or breach of fiduciary duty. The integrity of our tax collection system would be eroded if taxpayers under these circumstances

could establish reasonable cause for filing returns in an untimely manner.

We have considered petitioner's other arguments and found them to be without merit.

Accordingly, we sustain respondent's determination that petitioner is liable for the addition to tax under section 6651(a)(1).

To reflect the foregoing,

Decision will be entered

under Rule 155.