T.C. Summary Opinion 2006-84

UNITED STATES TAX COURT

JON DAVID COOKSEY, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7184-03S.                      Filed May 22, 2006.

Jon David Cooksey, pro se.

Steven W. LaBounty, for respondent.

GALE, Judge: This case was heard pursuant to the provisions
of section 7463[1] providing for small tax case proceedings.  The
decision to be entered is not reviewable by any other court, and
this opinion should not be cited as authority.

The petition in this case was filed in response to a Notice
of Determination Concerning Collection Action(s) Under Section

_____

[1] Unless otherwise noted, all section references are to the
Internal Revenue Code of 1986, as amended, and as applicable to
the year in issue.

6320 and/or 6330. Following concessions, we must decide whether respondent is entitled to proceed by levy to collect additions to tax under sections 6651(a)(2) and 6654 with respect to petitioner's 2000 taxable year.

## Background

Some of the facts have been stipulated and are incorporated by this reference.

Petitioner was a resident of Scarbourgh, Tobago, British West Indies, at the time the petition was filed. The address on petitioner's Federal income tax return for 2000 was P.O. Box 542, Scarbourgh, Tobago, British West Indies, which was petitioner's residence in 2000 and continued to be so through the time of trial.

For taxable year 2000, petitioner made two estimated tax payments of $32,157 each on April 21, 2000, and September 23, 2000. An estimated tax remittance of $32,157 for June 2000, however, was mistakenly placed in an envelope addressed to the State of Missouri Department of Revenue and mailed by petitioner's daughter, who was assisting him at his office. The State of Missouri Department of Revenue received the check on June 15, 2000, successfully negotiated it, and applied $32,157 against petitioner's State income tax liability for 2000. Petitioner had no amounts withheld with respect to his Federal income tax liability for 2000.

Petitioner's 2000 return was filed on July 18, 2001. Petitioner did not obtain any extension for filing the return. On the return, petitioner reported tax due of $119,849 plus an estimated tax penalty of $253 and claimed estimated tax payments of $96,471. (In fact, due to the misdirected June payment, petitioner's estimated tax payments totaled $64,314.) Accompanying the return was a payment of $23,631, of which amount $23,378 was for income tax and $253 was for the self-assessed estimated tax penalty.

On August 20, 2001, respondent assessed additions to tax for 2000 under sections 6651(a)(1)[2] and (2), and 6654.

Sometime in 2001,[3] the State of Missouri refunded to petitioner the $32,157 it had received from him, plus interest of $1,127.70.

On April 2, 2002, respondent issued to petitioner a Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to

---

[2] Respondent has since conceded the sec. 6651(a)(1) addition. Pursuant to his accountant's instructions, petitioner mailed his 2000 return in April 2001 to respondent's office in St. Louis, Mo. However, in light of petitioner's foreign residence, the return was required to be sent to respondent's Philadelphia, Pa. Service Center. The return did not reach the Philadelphia Service Center until July 2001. Given these circumstances, respondent concluded that petitioner had reasonable cause for the late filing and has treated the filing, as well as the accompanying $23,631 payment, as timely. See sec. 6651(a)(1).

[3] The parties have stipulated that the State of Missouri made this refund to petitioner "in 2001", but the record does not otherwise pinpoint the date.

a Hearing, regarding outstanding tax liabilities for 2000.  In response, petitioner timely filed a request for a hearing.

Respondent recorded a payment by petitioner of $32,157 (i.e., the amount of the misdirected estimated tax remittance) with respect to his 2000 Federal income tax liability on November 5, 2002.

Sometime in April or May 2003 respondent issued a notice of determination to petitioner concluding that the levy was appropriate.  Petitioner timely filed a petition for review of the determination under section 6330(d)(1).

## Discussion

Section 6331(a) authorizes the Secretary to levy upon property and property rights of a taxpayer liable for taxes who fails to pay those taxes within 10 days after notice and demand for payment is made.  Section 6331(d) provides that the levy authorized in section 6331(a) may be made with respect to any unpaid tax only if the Secretary has given written notice to the taxpayer 30 days before the levy.  Section 6330(a) requires the Secretary to send a written notice to the taxpayer of the amount of the unpaid tax and of the taxpayer's right to a section 6330 hearing at least 30 days before any levy is begun.

If a section 6330 hearing is requested, the hearing is to be conducted by the Commissioner's Office of Appeals, and, at the hearing, the Appeals officer conducting it must verify that the

requirements of any applicable law or administrative procedure have been met. Sec. 6330(b)(1), (c)(1). The taxpayer may raise at the hearing any relevant issue relating to the unpaid tax or the proposed levy. Sec. 6330(c)(2)(A). The taxpayer may also raise challenges to the existence or amount of the underlying tax liability at the hearing if the taxpayer did not receive a statutory notice of deficiency with respect to the underlying tax liability or did not otherwise have an opportunity to dispute that liability. Sec. 6330(c)(2)(B).

At the conclusion of the hearing, the Appeals officer must determine whether and how to proceed with collection and shall take into account (i) the verification that the requirements of any applicable law or administrative procedure have been met, (ii) the relevant issues raised by the taxpayer, (iii) challenges to the underlying tax liability by the taxpayer, where permitted, and (iv) whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the taxpayer that the collection action be no more intrusive than necessary. Sec. 6330(c)(3).

We have jurisdiction to review the Appeals officer's determination where we have jurisdiction over the type of tax involved in the case. Sec. 6330(d)(1)(A); see Iannone v. Commissioner, 122 T.C. 287, 290 (2004). Where the underlying tax liability is properly at issue, we review the determination de

novo. E.g., <u>Goza v. Commissioner</u>, 114 T.C. 176, 181-182 (2000). Where the underlying tax liability is not at issue, we review the determination for abuse of discretion. <u>Id.</u> at 182.

Respondent concedes that petitioner has not had an opportunity to dispute his liability for the section 6651(a)(2) and section 6654 additions to tax and is therefore entitled to do so in this proceeding. Consequently, we shall review de novo respondent's determination that petitioner is liable for the additions. See <u>id.</u>

<u>Section 6651(a)(2) Addition to Tax</u>

A taxpayer who fails to pay the tax shown on a return on or before the date prescribed for payment of such tax is subject to an addition to tax. Sec. 6651(a)(2). The date prescribed for payment of income tax is the due date for filing the return determined without regard to any extension of time for filing. Sec. 6151(a). The addition to tax will not apply if it is shown that the failure to pay was due to reasonable cause and was not due to willful neglect. Sec. 6651(a)(2); see also <u>United States v. Boyle</u>, 469 U.S. 241, 245 (1985). A failure to pay is due to reasonable cause if the taxpayer exercised "ordinary business care and prudence in providing for payment of his tax liability". Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.; see also <u>Merriam v. Commissioner</u>, T.C. Memo. 1995-432. The determination of whether reasonable cause exists is based on all the facts and

circumstances. <u>Estate of Hartsell v. Commissioner</u>, T.C. Memo. 2004-211; <u>Merriam v. Commissioner</u>, <u>supra</u>.

The regulations and other administrative guidance provided by respondent concerning reasonable cause for a failure to pay under section 6651(a)(2) are generally directed at the circumstances surrounding a taxpayer's <u>inability</u> to pay when due, and not defalcations in remitting payment, as occurred in the instant case. Reasonable cause in the case of failures in mailing or delivery are addressed in connection with failures to file under section 6651(a)(1), however, and present persuasive analogues, in our view. Respondent has advised his employees that reasonable cause for a failure to file timely generally exists where a return has been timely mailed but returned for insufficient postage, or sent to the wrong district. 2 Audit, Internal Revenue Manual (CCH), sec. 4562.2 at 14,356 (Feb. 25, 1987); see also <u>United States v. Boyle</u>, <u>supra</u> at 243 n.1; <u>McMahan v. Commissioner</u>, 114 F.3d 366, 369 (2d Cir. 1997), affg. T.C. Memo. 1995-547. However, an important factor bearing upon reasonable cause is the expeditiousness with which a taxpayer rectifies a mistake, once discovered. See Internal Revenue Manual (IRM) sec. 20.1.1.3.1.2 (2) (Aug. 20, 1998) (assessment of ordinary business care and prudence requires consideration of length of time between the event cited as a reason for noncompliance and subsequent compliance); IRM sec. 20.1.1.3.1.2.3

(2) (Aug. 20, 1998) (whether mistake gives rise to reasonable cause depends in part upon taxpayer's timely steps to correct the failure after its discovery); cf. Elec. & Neon, Inc. v. Commissioner, 56 T.C. 1324, 1342-1343 (1971) (lack of necessary information not reasonable cause for 8-month delay in filing where return preparers obtained information to complete, and did complete, return 12 days after due date).

Under section 7491(c), the Commissioner bears the burden of production with respect to a taxpayer's liability for any addition to tax. To meet that burden, the Commissioner must adduce "sufficient evidence indicating that it is appropriate to impose the relevant penalty." Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Once the Commissioner meets the initial burden of production, the taxpayer bears the burden of proving that the Commissioner's determination was incorrect; e.g., that the taxpayer's failure to pay was due to reasonable cause and was not due to willful neglect. Id. at 447.

Here, it is undisputed that the tax shown as due on petitioner's return was $119,849, whereas the amount paid by the April 16, 2001, due date of the return was $87,945.[4] We accordingly find that respondent has met his burden of production under section 7491(c).

---

[4] This figure consists of petitioner's two timely estimated tax payments of $32,157 each, and the $23,631 payment accompanying the return. See supra note 2.

Petitioner contends that his failure to pay was due to reasonable cause and not due to willful neglect because he "did nothing wrong"; envelopes merely got switched when he attempted to mail his June 2000 estimated payment to respondent, petitioner contends. If petitioner and/or his daughter had merely misdirected the June estimated tax payment to the Missouri Department of Revenue and then promptly made a remittance to respondent when the State of Missouri made the refund, we might be more sympathetic, given respondent's published guidance on reasonable cause in the case of mailing errors such as insufficient postage and incorrect addressing. However, that is not what happened here.

The parties have stipulated that the State of Missouri refunded the $32,157 misdirected payment (plus interest) to petitioner "in 2001". Respondent's Form 4340, Certificate of Assessments, Payments and Other Specified Matters, covering petitioner's 2000 income tax liability, records a payment by petitioner of $32,157 on November 5, 2002.[5] Thus, there was a

_____

[5] Petitioner claims that he received the refund from Missouri in May 2002 and sent a check to the IRS approximately 2 weeks thereafter. In conflict with this version of events is the Form 4340 for 2000, which records the payment as received on Nov. 5, 2002. Petitioner's claim is not corroborated, such as by a canceled check evidencing payment to the IRS at the time he claims. The Form 4340, by contrast, is presumptive evidence of its contents, barring a showing of its irregularity, which petitioner has not made. See Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993); Craig v. Commissioner, 119 T.C. 252,
(continued...)

delay of at least 10 months, and probably more, between the time petitioner received reasonable notice of the mistake (and a refund) and the time that he made payment to respondent.  In his testimony, the closest petitioner came to addressing this discrepancy was as follows:

> When I picked up the error that had happened, I came back [to the United States];  I brought the check back from Tobago, deposited it in the bank, and in less than two weeks I paid the Internal Revenue Service.  But I didn't know it was in my post office box in Tobago. I'd never -- I didn't receive anything in that time from the Missouri Department of Revenue saying what had happened.  [Emphasis added.]

As it is undisputed that the State of Missouri refunded the misdirected payment to petitioner in 2001, we conclude from petitioner's testimony that the refund check from the State of Missouri sat undiscovered in his post office box in Tobago for most of 2002.  Petitioner established a Tobago post office box as his address for tax purposes and apparently did not check that box for extended periods, resulting in his failure to learn of the misdirected estimated tax payment until several months after reasonable notice thereof was sent to him.  In considering the

---

[5](...continued)
262 (2002).  We accordingly conclude that petitioner did not remit the misdirected $32,157 to respondent until early November 2002.

Even if it were assumed that petitioner made the payment sometime in May 2002, our conclusion regarding his failure to exercise ordinary business care and prudence would not change, as it would still be the case that the State of Missouri's refund, made "in 2001", languished in petitioner's Tobago post office box for several months.

facts and circumstances surrounding his failure to pay respondent until November 2002, we do not believe the foregoing arrangements constitute the exercise of ordinary business care and prudence. Thus, petitioner has not shown that his failure to make timely payment of $32,157 of his 2000 income tax liability is due to reasonable cause. We accordingly hold that petitioner is liable for an addition to tax under section 6651(a)(2).[6]

Section 6654 Addition to Tax

Section 6654(a) imposes an addition to tax for failure to pay estimated income tax where prepayments of such tax, either through withholding or by making estimated quarterly tax payments during the course of the year, do not equal the percentage of total liability required under the statute, unless the taxpayer shows that one of the statutory exceptions applies. Sec. 6654(a); Niedringhaus v. Commissioner, 99 T.C. 202, 222 (1992). The amount required to be paid through each such estimated quarterly payment is 25 percent of the "required annual payment". Sec. 6654(d)(1)(A). The "required annual payment" is, in turn, the lesser of 90 percent of the tax shown on the return for that

---

[6] We suggested above that there might have been reasonable cause for the failure to pay during some period before petitioner was sent reasonable notice, by virtue of the State of Missouri's refund check, that his estimated tax payment had been misdirected. However, petitioner, who has the burden to show reasonable cause, has not established when in 2001 the refund check was sent. We therefore have no basis on which to demarcate the period for which there may have been reasonable cause.

taxable year or 100 percent of the tax shown on the return of the individual for the preceding taxable year (110 percent for individuals with adjusted gross income exceeding $150,000). Sec. 6654(d)(1)(B) and (C).

Section 6654 is essentially an interest charge on the amount by which a taxpayer underpays his or her estimated tax, until the earlier of the estimated tax's being paid or the due date of the return. S. Rept. 1622, 83d Cong., 2d Sess. 592 (1954); see also Bittker & Lokken, Federal Taxation of Income, Estates & Gifts, par. 111.5.6., at 111-135 (2d ed. 1992) (noting that section 6654 causes underpayments of estimated tax to effectively bear interest). There is no broadly applicable reasonable cause exception to the section 6654 addition to tax; in general, it is mandatory, and extenuating circumstances are irrelevant. Estate of Ruben v. Commissioner, 33 T.C. 1071, 1072 (1960); see also Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980) (imposition of section 6654 addition to tax is mandatory where estimated payments do not equal statutorily required percentage).

Respondent likewise bears the burden of production regarding the section 6654 addition to tax. Sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438 (2001). It is undisputed that the tax shown on petitioner's 2000 return was $119,849, that petitioner's estimated tax payments for 2000 totaled $64,314, and that petitioner's June 2000 estimated tax payment of $32,157 was not

received by respondent until November 5, 2002.  Accordingly, we conclude that respondent has met his burden of production under section 7491(c) regarding petitioner's liability for the addition to tax under section 6654.

Respondent having met his burden of production, it is incumbent upon petitioner to show that he is eligible for one of the statutorily provided exceptions to the section 6654 addition to tax.  See sec. 6654(e); Higbee v. Commissioner, supra at 446. Petitioner testified that he became disabled because of a detached retina in 1998 and continued to be disabled through the time of trial.  While section 6654(e)(3)(B) provides for a waiver of the addition where the Secretary determines that a taxpayer became disabled in the year for which the estimated taxes were required or the preceding year, such a waiver also requires that the underpayment of estimated tax be due to reasonable cause. Sec. 6654(e)(3)(B)(ii).  Thus, even had petitioner become disabled during 1999 or 2000, section 6654(e)(3)(B) would provide him no relief, since we have previously concluded that the circumstances surrounding petitioner's failure to remit the June 2000 estimated tax payment do not constitute reasonable cause.

As petitioner has neither claimed nor shown entitlement to any other exception, we hold that he is liable for an addition to tax under section 6654 for 2000.

Conclusion

Except for his claim that he is not liable for the additions to tax under sections 6651(a)(2) and 6654 for 2000, petitioner has raised no other issue with respect to respondent's proposed levy for 2000.  We therefore hold that respondent may proceed with the levy at issue herein.

To reflect the foregoing,

Decision will be entered for respondent.