T.C. Memo. 2007-203


UNITED STATES TAX COURT


ESTATE OF GERTRUDE ZLOTOWSKI, DECEASED, GUNTHER GREWE, ANCILLARY
ADMINISTRATOR, C.T.A., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 22150-04.                    Filed July 24, 2007.


        Susan Litwer, Howell Bramson, and Robert H. Rosh

(specially recognized), for petitioner.

        Lydia A. Branche and Shawna A. Early, for

respondent.


                    MEMORANDUM OPINION


        HALPERN, Judge:  This case involves the Federal estate tax.

The decedent (decedent) is Gertrude Zlotowski.  By notice of

deficiency dated August 24, 2004, respondent determined a

deficiency in Federal estate tax of $933,437 and an addition to tax for failure to file timely the estate tax return of $233,359.

All section references are to the Internal Revenue Code in effect for the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.

On account of stipulations made by the parties, which we accept, the sole issue remaining for our decision is the addition to tax for failure to file timely the estate tax return.

Some facts have been stipulated and are so found. The stipulation of facts, with accompanying exhibits, is incorporated herein by this reference. We need find few facts in addition to those stipulated and shall not, therefore, separately set forth our findings of fact. We shall make additional findings of fact as we proceed.

### Background

We may be brief in our background discussion since the issue before us is narrow: Was the failure to timely file the estate tax return due to reasonable cause and not due to willful neglect?

Decedent died on September 10, 1999. At that time, although a U.S. citizen, she was domiciled in Germany. She had made two wills, the U.S. will and a later, German will (the German will), which revoked the U.S. will.

Apparently in ignorance of the German will, on or about May 22, 2000, two individuals nominated in the U.S. will as executors, Jacques Roisen (Mr. Roisen) and Henry Helman (Mr. Helman), presented the U.S. will for probate in the Surrogate's Court of the State of New York (the Surrogate's Court). On May 31, 2000, the Surrogate's Court granted them preliminary letters testamentary. James R. Ledley, Esq. (Mr. Ledley), represented them in connection with their services in administering decedent's estate (the estate). Messrs. Roisen and Helman played little role in the selection of Mr. Ledley as their counsel, but they accepted him as having been selected by decedent's attorney. Some time early in June 2000, Mr. Ledley learned about the German will.

Because of the value of the estate, a Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return, was due from the executors of the estate on or about June 12, 2000. Messrs. Roisen and Helman requested and received an extension to file that return (the estate tax return) until December 10, 2000. The parties have stipulated that, with respect to that request, Mr. Ledley represented Messrs. Roisen and Helman. Messrs. Roisen and Helman did not file the estate tax return until September 19, 2001.

Some time in 2003, the heirs under the German will hired an American attorney to help with ancillary proceedings in the

Surrogate's Court.  On June 4, 2004, Dr. Gunther Grewe (Dr. Grewe) was appointed Ancillary Administrator, C.T.A., of the estate.  At the time the petition was filed, Dr. Grewe had a mailing address in Rye, New York.

On or about June 4, 2004, the preliminary letters testamentary issued to Messrs. Roisen and Helman were revoked.

At the trial of the case, Mr. Roisen testified; Mr. Helman did not, since he was deceased.  In part, Mr. Roisen testified as follows:  He is 85 years old.  He owns real estate and is the head of his own diamond firm.  He believes that he was nominated as an executor because he was close to decedent's husband, with whom he had done business.  He knew nothing about the estate and relied fully on the attorneys (i.e., Mr. Ledley), who were in charge of the estate.  The job of filing the estate tax return was in Mr. Ledley's hands.  He (Mr. Roisen) did not participate in the preparation of the estate tax return.  He had full confidence in Mr. Ledley, and his only responsibility with respect to filing the estate tax return was to sign it after it had been prepared by Mr. Ledley.  He signed the estate tax return on August 28, 2001.  He never discussed with Mr. Ledley penalties for a late-filed return.  In response to respondent's counsel's question as to whether Mr. Ledley had ever discussed with him whether the estate tax return was going to be filed on time, he answered as follows:  "Well, they mentioned it to me at one time

that they were a little late in the filing, and that they took care of it, and that they would file it a little later."

Mr. Ledley also testified at the trial of the case. In part, he testified as follows: It was his duty to prepare the estate tax return for Messrs. Roisen and Helman. He began that preparation after being retained in 2000. In late September or early October of 2000, he advised Messrs. Roisen and Helman to suspend their administration of the estate. He did so because he had received correspondence from Europe that, if Messrs. Roisen and Helman meddled in the estate, it would be at their own risk. He advised them to not then file an estate tax return. He, himself, suspended preparation of the estate tax return. He returned to preparation of the estate tax return either in late January or early February of 2001, since it was taking a long time for the heirs under the German will to take over the New York proceeding.

## Discussion

### I. Statutory Scheme

Section 2001(a) imposes an estate tax, and section 6018 imposes on the executor the obligation to make the necessary return of tax. The term "executor" is defined in section 2203, and the parties agree that (1) Messrs. Roisen and Helman were executors within the meaning of those sections, and (2) they, and

only they, were responsible for filing the estate tax return when it became due.

Section 6075 establishes that an estate tax return must be filed within 9 months after the decedent's death, and section 6081 allows the Secretary of the Treasury to grant an extension of time to file for no more than 6 months. Messrs. Roisen and Helman received an extension to file the estate tax return until December 10, 2000. The return was not filed until September 19, 2001, however, and was, therefore, delinquent.

Section 6651(a)(1) provides for an addition to tax in the event a taxpayer fails to file a timely return (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect. The amount of the addition is equal to 5 percent of the amount required to be shown as tax on the delinquent return for each month or fraction thereof during which the return remains delinquent, up to a maximum addition of 25 percent for returns more than 4 months delinquent.

II. Dispute

The parties do not dispute the computation of the section 6651(a)(1) addition to tax (which respondent agrees must be recomputed, due to additional deductions allowed petitioner). They dispute only whether petitioner has avoided the addition to tax by showing that Messrs. Roisen and Helman's delinquency in

filing the estate tax return was due to reasonable cause and not due to willful neglect.[1]

The term "willful neglect" denotes "a conscious, intentional failure or reckless indifference." United States v. Boyle, 469 U.S. 241, 245 (1985). Reasonable cause is established where, despite the exercise of ordinary business care and prudence, a taxpayer is unable to file timely. Id. at 246 & n.4; sec. 301.6651-1(c)(1), Proced. & Admin. Regs.; see also McMahan v. Commissioner, 114 F.3d 366, 369 (2d Cir. 1997) (considering elements constituting reasonable cause for late filings under section 6651(a)(1)), affg. T.C. Memo. 1995-547.

Respondent does not contend that the return was delinquent because of Messrs. Roisen and Helman's willful neglect, only that they have failed to establish reasonable cause for the delinquency. Respondent relies on the following points to support his reasonable cause conclusion: Reliance on the advice of an attorney concerning matters of law constitutes reasonable cause. However, a taxpayer's reliance on the advice of an attorney with respect to matters such as meeting filing deadlines generally does not constitute reasonable cause. Here, Mr. Ledley

---

[1] The delinquency having been established, respondent has met the burden of production placed on him by sec. 7491(c), see, e.g., Weaver v. Commissioner, T.C. Memo. 2004-108, and petitioner bears the burden of proving reasonable cause and the lack of willful neglect, see Rule 142(a); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

gave Messrs. Roisen and Helman no advice on which they could rely.  They have failed to show that he advised them that, as a matter of law, it was not necessary to file timely the estate tax return.  Moreover, their reliance on him to file the estate tax return was an impermissible delegation of their responsibility as executors.  Respondent adds: "If the executor is unable to obtain complete information about the decedent['s] assets, he must still file a timely tax return based on the information available at that time."

Petitioner relies principally on the argument that Messrs. Roisen and Helman had reasonable cause "because it is abundantly clear that they relied on the advice of their attorney not to file at the time the return was due."

III.  Discussion

A.  Introduction

In United State v. Boyle, supra at 249-250, the Supreme Court stated:

> Congress has placed the burden of prompt filing [of an estate tax return] on the executor, not on some agent or employee of the executor. * * * Congress intended to place upon the taxpayer an obligation to ascertain the statutory deadline and then to meet that deadline, except in a very narrow range of situations.

The Court recognized that engaging an attorney to assist in probate proceedings is "plainly an exercise of the 'ordinary business care and prudence' prescribed by [section 301.6651-1(c)(1), Proceed. & Admin. Regs.]".  Id. at 250.

Nevertheless, describing the executor's duty to file the return as an "unambiguous, precisely defined duty", the Court cautioned that the executor's expectation that the attorney, as his agent, would attend to the matter "does not relieve the principal of his duty to comply with the statute." Id. The Court described as among those very narrow circumstances in which an executor may be excused from discharging his duty to ascertain and meet the filing deadline the circumstance in which an executor has relied on the erroneous advice of counsel concerning a question of law; e.g., "when a taxpayer shows that he reasonably relied on the advice of an accountant or attorney that it was unnecessary to file a return, even when such advice turned out to have been mistaken." Id.

B. Analysis

We start our analysis with two unassailable facts: Messrs. Roisen and Helman were obligated to file the estate tax return no later than December 10, 2000, and they failed in that obligation. Petitioner may escape an addition to tax on account of that failure if he can show that they had reasonable cause for the failure because they reasonably relied on the advice of Mr. Ledley that they had no such obligation. Petitioner, however, has failed to make that showing. Indeed, petitioner has failed to show that, on December 10, 2000, Messrs. Roisen and Helman were aware that the last day for filing the estate tax return was

passing without the return being filed, much less that they let it pass without filing the return in reliance on Mr. Ledley's advice.

Mr. Helman is deceased, and petitioner has provided no evidence of Mr. Helman's state of mind. Mr. Roisen testified about his administration of the estate, and, from that testimony, we draw the conclusion that he was almost completely disengaged from estate administration, relying on Mr. Ledley to do virtually all that was required of him and Mr. Helman. Specifically, we make the following findings, based on Mr. Roisen's testimony: He agreed to serve as an executor to accommodate his old business acquaintance, decedent's husband. He relied on decedent's attorney for the selection of Mr. Ledley as executors' counsel. He knew nothing about the estate and relied fully on Mr. Ledley, who, from his perspective, was in charge of the estate. Apart from signing the Form 706, he did not participate in filing it, which job, he believed, was in Mr. Ledley's hands. He never discussed with Mr. Ledley penalties for a late-filed return. He only discussed with Mr. Ledley whether the return was going to be filed on time after it already was late.

Mr. Roisen's almost complete disengagement from return preparation is captured by his final exchange with one of respondent's counsel:

Q:   So, essentially your testimony is that they [i.e.,
     Mr. Ledley] took care of everything relative to
     the filing of the return?

A:   Absolutely.  That is a hundred percent correct.

Q:   And you had no participation in the filing of the
     return?

A:   No, except that they required my signature,
     because being the executor of the will, I had to
     sign it, and which I did.  I had full confidence
     in them.

Mr. Roisen signed the estate tax return, on August 28, 2001, after it was more than 8 months overdue.

While we have before us Mr. Ledley's testimony that, in late September or early October of 2000, he advised Messrs. Roisen and Helman to suspend their administration of the estate and he also advised them not to file an estate tax return, we have no testimony from Mr. Roisen that either he or Mr. Helman ever received (or, if received, understood) that advice.  At trial, Mr. Roisen was called as a witness by petitioner.  He was examined by one of petitioner's counsel with respect to advice received from Mr. Ledley.  He readily agreed with counsel that he had received advice from Mr. Ledley and had followed that advice. Counsel's questions, however, were with respect to advice generally; she did not ask Mr. Roisen whether he received and followed any advice with respect to not making a timely return of tax (i.e., filing the estate tax return on or before December 10, 2000).  We infer from that failure of inquiry that Mr. Roisen's

answer to that question would not have been favorable to petitioner's case. See <u>Wichita Terminal Elevator Co. v. Commissioner</u>, 6 T.C. 1158, 1165 (1946) ("the failure of a party to introduce evidence within his possession and which, if true, would be favorable to him, gives rise to the presumption that if produced it would be unfavorable"), affd. 162 F.2d 513 (10th Cir. 1947). We are not dissuaded by Mr. Ledley's testimony from our conclusion, expressed above, that petitioner has not shown that Messrs. Roisen and Helman's failure to file timely the return was due to their reliance on advice received from Mr. Ledley.

Finally, even considering Mr. Ledley's advice, it was not advice that, as a matter of law, Messrs. Roisen and Helman had no obligation to file an estate tax return by December 10, 2000. It was simply advice that there was some risk (unspecified) with continuing their administration of the estate (including filing the estate tax return). Indeed, Mr. Ledley returned to preparation of the estate tax return in late January or early February 2001 since, he testified, it was taking a long time for the heirs under the German will to take over the New York proceeding.[2]

---

[2] Until Messrs. Roisen and Helman were relieved of their duties as executors, there is no question but that it was their obligation to file the Form 706. See sec. 20.6018-2, Estate Tax Regs. Although they may not have had complete information about the German assets, they could have satisfied that obligation by filing a timely tax return based on the best information

(continued...)

C. <u>Conclusion</u>

Petitioner has failed to show that, on account of reasonable cause and not due to willful neglect, petitioner is excepted from liability for the section 6651(a)(1) addition to tax.

IV. <u>Conclusion</u>

Petitioner is liable for an addition to tax pursuant to section 6651(a)(1) for failure to file timely the Form 706.

<u>Decision will be entered under Rule 155</u>.

---

[2](...continued)
available and later filing an amended return.  See <u>Estate of Vriniotis v. Commissioner</u>, 79 T.C. 298, 311 (1982).