T.C. Summary Opinion 2010-123

UNITED STATES TAX COURT

PAUL AND LUCIA P. DELTORO, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6475-09S.                    Filed August 25, 2010.

Paul and Lucia P. Deltoro, pro sese.

Lesley Hale, for respondent.

ARMEN, Special Trial Judge:  This case was heard pursuant to
the provisions of section 7463 of the Internal Revenue Code in
effect when the petition was filed.[1]  Pursuant to section
7463(b), the decision to be entered is not reviewable by any

---

[1]  Unless otherwise indicated, all subsequent section
references are to the Internal Revenue Code in effect for the
year in issue, and all Rule references are to the Tax Court Rules
of Practice and Procedure.

other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency in petitioners' 2001 Federal income tax of $3,044 and an addition to tax of $1,444 under section 6651(a)(1) for failure to timely file a tax return.[2]

After respondent's concessions,[3] the issues for decision are: (1) Whether petitioners are entitled to a deduction for travel expenses under section 162(a)(2); and, if not, (2) whether petitioners are liable for the addition to tax under section 6651(a)(1) for failure to timely file a tax return. The resolution of the first issue turns on whether petitioner Paul Deltoro's employment in the San Francisco Bay area was temporary versus indefinite.

## Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of facts, supplemental stipulation of facts, and accompanying exhibits.

---

[2] All dollar amounts are rounded to the nearest dollar.

[3] Respondent concedes that petitioners are entitled to a deduction for union dues of $6,382 and a deduction for work boots and supplies of $250.

Petitioners resided in the State of California when the petition was filed. All references to petitioner in the singular are to petitioner Paul Deltoro.

By profession, petitioner is (and has been for some 35 years) a pipefitter.[4] As a pipefitter, petitioner is a member of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada (UA).[5] In 1976 petitioner became a member of UA Local 460 in Bakersfield, California, and he was a member of that local for most of his career, specifically including 2001.[6]

---

[4] A pipefitter (also known as a steamfitter) is a tradesman who lays out, assembles, fabricates, maintains, and repairs mechanical piping systems. http://en.wikipedia.org/wiki/Pipefitter. Because such piping systems typically operate under high pressure, metals such as carbon steel, stainless steel, and other alloy metals are required and the pipefitter must fuse together pipes made of such metals through precise cutting, threading, grooving, bending, and welding. Id.

[5] The UA is a multicraft union whose 326,000 members are engaged in the fabrication, installation, and servicing of various piping systems throughout the United States and Canada. http://www.ua.org.

[6] In 2005 petitioner transferred his membership from UA Local 460 to UA Local 342 and since that time has remained a member of UA Local 342. The business office of UA Local 342 is located in Concord, California, which city is located in Contra Costa County and proximate to Pittsburg and Martinez, which are also located in Contra Costa County. That county is part of the East Bay area. See infra note 8.

- 4 -

By 2000 pipefitting work in Bakersfield had become scarce. Petitioner learned that opportunities in pipefitting abounded in the San Francisco Bay area (the Bay area). Petitioner seized the opportunity and headed to the Bay area to look for work. This put him on travel status with UA Local 460 in Bakersfield.[7]

Petitioner is exceptionally skilled as a pipefitter, having a specialty in instrument and process controls. He was (and remains) willing to work in refineries. These characteristics made him highly desirable to contractors in the Bay area.

In late 2000 petitioner was offered an opportunity to work for Performance Mechanical, Inc. (PMI), of Pittsburg, California, on a project at a refinery in the East Bay.[8] This first project with PMI lasted into January 2001, after which petitioner was offered a position by the same foreman for PMI at a different refinery in the East Bay.

Upon completion of a project, union members usually sign the "out-of-work book" at the business office of their local union and wait to be called for another project. Petitioner, however,

---

[7] When union members are on travel status, their names are removed from the "out-of-work book" at the business office of their local union, thereby preventing them from being called by their local union for assignments in its geographical territory.

[8] The East Bay is a region of the San Francisco Bay Area and comprises both Alameda and Contra Costa Counties. It lies on the eastern shores of the San Francisco and San Pablo Bays. Cities located in the East Bay include Oakland, Berkeley, Pittsburg, Richmond, and Martinez. http://en.wikipedia.org/wiki/East_Bay_(San_Francisco_Bay_Area).

did not typically return to Bakersfield to sign the "out-of-work book", but waited for a call directly from the PMI foreman for an assignment to a new project in the East Bay.[9]

Throughout 2001 petitioner continued to work on various projects for PMI at three different refineries in the East Bay.[10] All of petitioner's paychecks for 2001 were issued by PMI.

Petitioner's calendar and paystubs indicate that petitioner did not work on approximately 10 weekdays during the year (not including holidays). During the month of March petitioner did not work on 4 consecutive days, but was able to maintain a 40-hour workweek by working 4 Saturdays throughout the month, a practice that his calendar demonstrates was uncommon. In July petitioner was off for 3 consecutive days; however petitioner was not off due to the end of a project, as he worked the same job preceding and following the days off. After 2001, and through the time of trial, petitioner has worked mostly on projects for

---

[9] Although a union pipefitter was typically offered an assignment based on "coming to the top of" the "out-of-work book", i.e., becoming first on the list, an exception was permitted if a particular specialty (such as instrument and process controls) was involved. In addition, local union rules permitted a "name call", whereby a contractor wishing to retain a particular pipefitter was entitled to "call so many individuals for a particular job by name." Because of his in-demand specialty, his exceptional skill, and his strong work ethic, when petitioner signed the "out-of-work book" he usually obtained his assignments by "name call".

[10] At trial petitioner explained that in the East Bay there are approximately five refineries within a "15-mile spread".

PMI with a few intervening projects with other contractors in the Bay area.

At some point in 2002 petitioner signed the "out-of-work book" at the business office of the local union in Bakersfield, but after 1 month of not being able to find work he returned to work for PMI in the East Bay. In 2006 work became available in the Bakersfield area, but petitioner did not return to Bakersfield at that time.[11] In addition, although petitioner's preference would have been to work in Bakersfield, the rate of pay in the Bay area was the highest in the State, thereby helping to "offset some of the living expenses that you have working away from [your] home."

For many years, specifically including 2001 and all years thereafter, petitioners have resided in Bakersfield, approximately 5 hours south of the Bay area. At the beginning of the work week petitioner commuted by train or car from Bakersfield to the East Bay and made the return trip at the end of the work week. During the work week petitioner stayed in the East Bay at an apartment that he rented on a month-to-month basis. Petitioner incurred expenses for transportation between Bakersfield and the East Bay, the apartment rental in the East Bay, and meals while in the East Bay.

---

[11] As noted earlier, in 2005 petitioner transferred his membership from UA Local 460 in Bakersfield to UA Local 342 in Concord (Contra Costa County).

Petitioners' 2001 Federal income tax return was dated "3-29-07" and received by the Internal Revenue Service field office in Bakersfield, California, on that same date. On their return, petitioners reported income of $99,426, of which $91,134 represented wages received by petitioner from PMI. Petitioners claimed a deduction for unreimbursed employee business expenses of $18,927 reported on a Form 2106, Employee Business Expenses. The unreimbursed employee business expenses included amounts for union dues, work boots and supplies, and travel expenses.

In the notice of deficiency, respondent disallowed most of the deduction claimed by petitioners for unreimbursed employee business expenses on their Form 2106. Respondent also determined that petitioners are liable for an addition to tax for failure to timely file a tax return.

Discussion

A. <u>Section 162 Travel Expenses</u>

As a general rule, personal living expenses are nondeductible. Sec. 262; secs. 1.162-2(a), 1.262-1(b)(5), Income Tax Regs. However, section 162(a)(2) allows a taxpayer to deduct ordinary and necessary travel expenses (including meals and lodging) paid or incurred while away from home in pursuit of a trade or business. <u>Commissioner v. Flowers</u>, 326 U.S. 465, 470 (1946).

The reference to "home" in section 162(a)(2) means the taxpayer's "tax home".[12]  Mitchell v. Commissioner, 74 T.C. 578, 581 (1980); Foote v. Commissioner, 67 T.C. 1, 4 (1976); Kroll v. Commissioner, 49 T.C. 557, 561-562 (1968).  As a general rule, a taxpayer's principal place of employment is his tax home, not where his personal residence is located, if different from his principal place of employment.  Mitchell v. Commissioner, supra at 581; Kroll v. Commissioner, supra at 561-562.  If a taxpayer for personal reasons chooses to reside in a different location than that of his principal place of employment, his residence is not recognized as his home for tax purposes.  Commissioner v. Flowers, supra; Jones v. Commissioner, 54 T.C. 734, 740 (1970), affd. 444 F.2d 508 (5th Cir. 1971).

An exception to the general rule exists where a taxpayer accepts temporary, rather than indefinite, employment away from his personal residence; in that case, the taxpayer's personal residence may be his tax home.  Peurifoy v. Commissioner, 358 U.S. 59, 60 (1958).

Employment is temporary if its termination can be foreseen within a fixed or reasonably short period of time.  Mitchell v.

---

[12]  The vocational "tax home" concept was first construed by this Court in Bixler v. Commissioner, 5 B.T.A. 1181, 1184 (1927), and has been steadfastly upheld by this Court.  See, e.g., Horton v. Commissioner, 86 T.C. 589 (1986); Leamy v. Commissioner, 85 T.C. 798 (1985); Foote v. Commissioner, 67 T.C. 1 (1976); Kroll v. Commissioner, 49 T.C. 557 (1968).

Commissioner, supra at 581; Stricker v. Commissioner, 54 T.C. 355, 361 (1970), affd. per curiam 438 F.2d 1216 (6th Cir. 1971). Employment that merely lacks permanence is indefinite unless termination is foreseeable within a short period of time. Norwood v. Commissioner, 66 T.C. 467, 470 (1976); Kroll v. Commissioner, supra at 562. Section 162(a) further provides that the taxpayer shall not be treated as being temporarily away from home during any period of employment if such period exceeds 1 year.

This Court has held that a taxpayer who is kept away from his family residence because of his work at a series of temporary jobs in disparate geographical areas is considered away from home while so employed. Dean v. Commissioner, 54 T.C. 663 (1970). However, a taxpayer who works in the same area, and no other, for a protracted length of time is not considered away from home. Curtis v. Commissioner, T.C. Memo. 1970-299 (taxpayer worked as a pipefitter on a variety of different jobs throughout the year, but all jobs were within 22-1/2 miles of Dolton, Illinois, whereas taxpayer claimed his tax home was Kerrville, Texas), affd. 449 F.2d 225 (5th Cir. 1971).

Petitioner contends that his employment in the Bay area was temporary and therefore that his tax home was in Bakersfield, as that was where he maintained a home and resided while he was not living and working in the Bay area. Respondent argues that

petitioner's employment in the Bay area was indefinite and that his tax home was not his residence in Bakersfield but rather the Bay area, which was the vicinity of his employment.  For the following reasons, we agree with respondent.

In 2000 petitioner headed to the Bay area after learning about an abundance of work opportunities for pipefitters in that region.  Petitioner began working on a project for PMI in late 2000.  That first position with PMI lasted into early 2001, after which time petitioner was consistently offered positions on projects with PMI in the Bay area.  These projects lasted throughout 2001, and petitioner has continued to work on projects for PMI in the Bay area through the time of trial.  When a project with PMI was finished, petitioner would not typically sign the "out-of-work book" at the business office of the local union in Concord but rather would wait for a call from PMI for an assignment to a new project in the Bay area.  Although petitioner stated that he worked on a few intervening projects with other contractors in years after 2001, those projects were also in the Bay area.

Petitioner stated that his preference would have been to work in Bakersfield; however, there were no opportunities there in petitioner's specialty, and even when an opportunity for work in "general" pipefitting arose, petitioner did not return to Bakersfield.  In addition, when petitioner was on travel status

away from the local union in Bakersfield, his name was removed from the "out-of-work book", such that he could not be selected for work there while "traveling".

Petitioner stated that he signed the "out-of-work book" at the business office of the local union in Bakersfield at some point in 2002. However, after a month of not being able to secure work, he headed back to the East Bay to again work for PMI.[13]

Finally, petitioner stated that the rate of pay in the Bay area was the highest in the State and that it was worth his while to travel to the East Bay. Indeed, petitioner testified that "If I had the chance to work, you know, in Modesto as opposed to the Bay area, I would probably take the Bay area because the dollar difference would help pay some of those expenses."

For the foregoing reasons, we find that petitioner's employment in the Bay area was indefinite, and not temporary. It was personal choice, and not business exigencies, that dictated petitioner's decision to maintain his residence in Bakersfield and incur expenses related to his employment in the Bay area. See Commissioner v. Flowers, 326 U.S. at 474.

---

[13] Petitioner's commitment to the Bay area, and to the East Bay in particular, is demonstrated by the fact that in 2005 he transferred his membership from the UA local in Bakersfield to the UA local in Contra Costa County.

In conclusion, because petitioner was not "away from home" within the meaning of section 162(a)(2), he is not entitled to a deduction for expenses incurred in what was essentially a long-distance commute to work. Accordingly, we sustain respondent's determination on this issue.

B. Section 6651(a)(1) Addition to Tax

Section 6651(a)(1) imposes an addition to tax for failure to file a return by its due date. The addition equals 5 percent for each month or fraction thereof that the return is late, not to exceed 25 percent.

In the absence of an extension, the last date for petitioners to have timely filed their Federal income tax return for 2001 was Monday, April 15, 2002. See sec. 6072(a). Respondent has proven, and has therefore discharged his burden of production under section 7491(c), that petitioners' 2001 Federal income tax return was not received and filed until March 29, 2007, more than 5 years after its due date.

"A failure to file a tax return on the date prescribed leads to a mandatory penalty unless the taxpayer shows that such failure was due to reasonable cause and not due to willful neglect." McMahan v. Commissioner, 114 F.3d 366, 368 (2d Cir. 1997), affg. T.C. Memo. 1995-547. A showing of reasonable cause requires a taxpayer to show that he or she exercised "ordinary business care and prudence" but was nevertheless unable to file

the return within the prescribed time.  <u>United States v. Boyle</u>, 469 U.S. 241, 246 (1985); sec. 301.6651-1(c)(1), Proced. & Admin. Regs.

Petitioners have not offered any persuasive evidence to establish that the late filing of their return was due to reasonable cause and not due to willful neglect.  Accordingly, we hold that petitioners are liable for the addition to tax under section 6651(a)(1).

<u>Conclusion</u>

We have considered all of the other arguments made by petitioners and, to the extent that we have not specifically addressed those arguments, we conclude that they do not support a result contrary to that reached herein.

To reflect our disposition of the disputed issues, as well as respondent's concessions,

<u>Decision will be entered</u>

<u>under Rule 155</u>.