T.C. Memo. 2018-5

UNITED STATES TAX COURT

MICHELLE KEEL, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1410-17.                    Filed January 16, 2018.

Michelle Keel, pro se.

<u>Donielle A. Hubbard</u>, <u>Horace Crump</u>, and <u>Edwin B. Cleverdon</u> for
respondent.

MEMORANDUM OPINION

BUCH, <u>Judge</u>:  This case is before us on the Commissioner's motion for
summary judgment.  The issue is whether Ms. Keel's 2015 tax liability must
increase by the amount of the advance premium assistance tax credit that was

[*2] applied to her monthly health insurance premium. Because Ms. Keel's income exceeded 400% of the Federal poverty line, Ms. Keel was not entitled to the credit, and we will grant the Commissioner's motion for summary judgment.

Background

During 2015 Ms. Keel received benefits under the Affordable Care Act. On the basis of her estimated household income, Ms. Keel was eligible for an advance premium assistance tax credit of $335 a month to be applied to her monthly health insurance premium. These payments were made on her behalf beginning in March 2015.

Ms. Keel earned $39,210 for 2015 from Sweet OM Yoga, Inc. In 2015 Bank of America discharged a $16,163 debt owed by Ms. Keel. The amount of discharged debt generally is treated as income, and this discharge increased Ms. Keel's 2015 income to over $55,000. In 2014, 400% of the Federal poverty line for a family of one residing in Alabama was $46,680. Including the discharged debt in Ms. Keel's income put her over that limit.

On her 2015 Federal income tax return Ms. Keel reported $12,000 of wage income, $27,210 of income on Schedule E, Supplemental Income and Loss, and

[*3] $16,164 of cancellation of indebtedness income.[1]  Ms. Keel did not attach

Form 8962, Premium Tax Credit, to her 2015 tax return.  That form is used to

reconcile the amount of the advance premium assistance tax credit the taxpayer

received with the amount of the premium assistance tax credit the taxpayer is

entitled to.

On October 11, 2016, the Commissioner issued a notice of deficiency to Ms.

Keel.  The only adjustment in that notice of deficiency was to disallow the $3,350

advance premium assistance tax credit, the effect of which was to increase her tax

liability by the amount of that disallowed credit.  Ms. Keel timely petitioned this

Court while residing in Alabama.

This case was calendared for trial at the Court's January 8, 2018,

Birmingham, Alabama, trial session.  On October 16, 2017, the Commissioner

filed a motion for summary judgment under Rule 121.[2]  The Court ordered Ms.

Keel to respond, but she did not do so.  Her position as stated in her petition is that

---

[1]Ms. Keel reported $16,164 on line 21 of her 2015 tax return, but her Form 1099-C, Cancellation of Debt, shows discharged debt of $16,163.

[2]Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure and all section references are to the Internal Revenue Code in effect for the year at issue.

[*4] the cancellation of indebtedness income should be disregarded when determining her eligibility for the premium assistance tax credit.

## Discussion

The issue before this Court is whether we should grant the Commissioner's motion for summary judgment. Under Rule 121(a), either party may move for summary judgment regarding all or any part of the legal issues in controversy. We may grant summary judgment only if there is no genuine dispute as to any material fact.[3]

The party moving for summary judgment bears the burden of demonstrating that there is no genuine dispute as to any material fact.[4] "In deciding whether to grant summary judgment, the factual materials and the inferences drawn from them must be considered in the light most favorable to the nonmoving party."[5] When a motion for summary judgment is made and properly supported, the nonmoving party may not rest on mere allegations or denials, but must set forth

---

[3]Rule 121(b); Naftel v. Commissioner, 85 T.C. 527, 529 (1985).

[4]Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994).

[5]FPL Group, Inc. v. Commissioner, 115 T.C. 554, 559 (2000).

[*5] specific facts showing that there is a genuine dispute for trial.[6] As a general matter, the Commissioner's determinations in the notice of deficiency are presumed correct, and the taxpayer bears the burden of proving an error.[7]

The Commissioner determined that Ms. Keel was not entitled to the advance premium assistance tax credit payments made on her behalf for 2015.[8] Ms. Keel does not dispute that these payments were made on her behalf or that her income was above 400% of the Federal poverty line. Instead, she argues that her cancellation of indebtedness income should not be included when calculating her income for purposes of determining whether she is eligible to receive the premium assistance tax credit.

The premium assistance tax credit is intended to offset the cost of health insurance. A recipient of the premium assistance tax credit can choose to receive the benefits of these payments in advance.[9] These credits are paid directly to the insurer in the form of monthly payments based on advance eligibility

_____

[6]Rule 121(d).

[7]Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

[8]See McGuire v. Commissioner, 149 T.C. __, __ (slip op. at 3) (Aug. 28, 2017), for a full discussion of eligibility requirements.

[9]Patient Protection and Affordable Care Act (ACA), Pub. L. No. 111-148, sec. 1412(a), 124 Stat. at 231.

[*6] determinations.[10]  The insurers who receive the payments are required to reduce the premium charged to the insured by the amount of the advance premium assistance tax credit received.[11]  The insurers also must notify the Secretary of Health and Human Services of the reduction in the premiums and include this amount in the billing statements to the insured.[12]

Sometimes circumstances change, and a taxpayer's annual income might be more or less than the estimate that was used when the advance premium assistance tax credit was determined.  At the end of the year a taxpayer who receives an advance premium assistance tax credit must reconcile the amount of the credit received (i.e., the premiums paid with the advance credits) with the eligible credit amount.[13]  This is done when the taxpayer files his or her annual income tax return.  If the amount of the advance premium assistance tax credit is more than the amount to which the taxpayer is ultimately entitled, the taxpayer owes the excess credit back to the Government, and it is reflected as an increase in tax.[14]  A

---

[10]ACA sec. 1412(c)(2)(A).

[11]ACA sec. 1412(c)(2)(B).

[12]ACA sec. 1412(c)(2)(B)(ii) and (iii).

[13]Sec. 36B(f).

[14]Sec. 36B(f)(2).

[*7] taxpayer with income greater than 400% of the Federal poverty line is not eligible for the credit, and the full amount of the advance premium assistance tax credit received during the year must be included as a tax liability with the tax return.[15] During 2014 the Federal poverty line was $11,670 for a one-person household in Alabama and 400% of the Federal poverty line was $46,680.[16]

Ms. Keel argues that her cancellation of indebtedness income should not be included when calculating her household income for purposes of the premium assistance tax credit. As pertinent here, household income is defined as the modified adjusted gross income of the taxpayer.[17] Gross income includes income from the discharge of indebtedness.[18] And while there are adjustments to gross income for the purpose of determining modified adjusted gross income, none of those adjustments is relevant here.[19] Accordingly, Ms. Keel's cancellation of indebtedness income is included in calculating her modified adjusted gross income for purposes of the premium assistance tax credit.

---

[15]Sec. 36B(f)(2); sec. 1.36B-4(a)(4), Example (5), Income Tax Regs.

[16]See sec. 36B(d)(3)(B).

[17]Sec. 36B(d)(2)(A)(i), (ii).

[18]Sec. 61(a)(12).

[19]Sec. 36B(d)(2)(B).

**[*8]**   Ms. Keel received an advance premium assistance tax credit in 2015 based on her projected income.  But when Bank of America discharged Ms. Keel's debt of $16,163, her income rose above 400% of the Federal poverty line.  Because Ms. Keel's household income exceeded that threshold, she is not entitled to any of the advance premium assistance tax credit that she received.

To reflect the foregoing,

<u>An appropriate order and decision will be entered for respondent</u>.