T.C. Memo. 2020-87

UNITED STATES TAX COURT

NELSON G. ABREGO AND REINA E. ABREGO, Petitioners <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23713-17.                    Filed June 16, 2020.

Nelson G. Abrego and Reina E. Abrego, pro sese.

<u>Christopher J. Richmond</u> and <u>Steven Roth</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COPELAND, <u>Judge</u>:  For Nelson and Reina Abrego's 2015 tax year, the

Commissioner determined a $9,210 deficiency in Federal income tax, a $1,744.50

addition to tax for late filing under section 6651(a)(1),[1] and a $1,566.80 penalty

_____

[1]Unless otherwise indicated, all section references are to the Internal

(continued...)

**[*2]** for a substantial understatement of tax pursuant to section 6662(b)(2) and (d).

After concessions,[2] the issues for decision are:

1.    whether the Abregos received excess advance payments of the premium assistance tax credit (commonly known as the premium tax credit or PTC) allowed under section 1412 of the Patient Protection and Affordable Care Act, which in turn increased their tax due by the amount of the excess, subject to the limitations set forth in section 36B(f)(2)(B).  We hold that the Abregos are liable for the tax subject to limitations; and

2.    whether the Abregos are liable for the addition to tax under section 6651(a)(1) for filing their 2015 tax return late.  We hold that they are liable.

---

[1](...continued)
Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Before trial, the Commissioner conceded the sec. 6662(b)(2) substantial understatement of income tax penalty.  During trial, the Commissioner also conceded that, for 2015, the Abregos are entitled to deduct self-employed health insurance costs under sec. 162(l), which in turn lowered their household income such that the limitations set forth in sec. 36B(f)(2)(B) would apply.  The sec. 162(1) concession also lowered their underlying tax due, before considering excess advance premium tax credits.

**[\*3]**                                          FINDINGS OF FACT

Some facts have been stipulated and are so found.  The Abregos resided in California when they timely filed their petition.[3]  During 2015 Mr. Abrego was employed as a driver with Access, an entity engaged in the transportation of disabled persons.  Mr. Abrego also ran a small business preparing tax returns, mostly for friends and family members.  He estimates that he has prepared tax returns for 20 years and that during 2015 he prepared between 20 and 30 tax returns.  Mr. Abrego receives yearly tax training and acknowledged that April 15 is the deadline for filing returns.  Mrs. Abrego was employed as a housekeeper.

Although Mr. Abrego was eligible for Medicare during 2015, the Abregos nevertheless purchased private health insurance because they expected to receive the PTC.  From March 1 through December 31, 2015, the Abregos were enrolled in health insurance coverage from Health Net HMO through Covered California, a health insurance marketplace.  The plan required the Abregos to pay monthly premiums of $1,029.01.

The U.S. Department of the Treasury (Treasury) offset the cost of the Abregos' plan premiums by making monthly advance PTC (APTC) payments to

---

[3]Mrs. Abrego did not appear at trial.  For simplicity, we will refer to the positions taken by Mr. and Mrs. Abrego in their petition and by Mr. Abrego at trial as those of the Abregos collectively.

[*4] the plan on the Abregos' behalf.  See Patient Protection and Affordable Care Act  (ACA), Pub. L. No. 111-148, sec. 1412, 124 Stat. at 231 (2010).  Treasury paid the plan 10 monthly installments of $921 for a total of $9,210 during 2015.  During those 10 months the Abregos paid the difference between their monthly plan premium, $1,029.01, and the amount of the monthly APTC, $921, or $108.01 per month for a total of $1,080.10 for the year.  The Abregos received from Health Net HMO a Form 1095-A, Health Insurance Marketplace Statement, for the year 2015 which delineated (1) the cost of the monthly plan premiums, (2) the monthly benchmark plan premium (called the Second Lowest Cost Silver Plan) of $1,082.39 used to calculate the PTC, and (3) the amount of monthly installments of APTCs paid to the plan.

The Abregos' 2015 Form 1040, U.S. Individual Income Tax Return, was due April 15, 2016, yet the Abregos did not file their 2015 Form 1040 until January 24, 2017.  At no point did they request an extension.  They did not file their return by the April 15 deadline because they expected to receive a refund.  On their 2015 return they claimed two personal exemptions and reported the following items:  (1) wages totaling $58,760; (2) business income of $662 on a Schedule C, Profit or Loss From Business; (3) a capital loss of $3,000; and (4) Social Security benefits totaling $12,357, of which $10,503 was taxable.  All

[*5] told, the Abregos reported gross income of $66,925 and adjusted gross income (AGI) of $61,478 on their 2015 Form 1040. On the basis of their return the Abregos' household income (HHI) for 2015 was $63,332. See infra p. 6. That sum represents the Abregos' 2015 AGI of $61,478, plus the $1,854 untaxed portion of their 2015 Social Security income. Importantly, on their return the Abregos left blank line 69, Net Premium Tax Credit. The Abregos also failed to attach to their return Form 8962, Premium Tax Credit, which is used to reconcile the amount of the APTC a taxpayer receives with the amount of the PTC to which the taxpayer is ultimately entitled.

The Abregos did not claim a deduction for self-employed health insurance costs despite reporting net self-employment income on their Schedule C and being entitled to a self-employed health insurance deduction of $662 for 2015.

On September 11, 2017, the Commissioner issued the Abregos a statutory notice of deficiency determining that the Abregos (1) received APTC payments of $9,210, but (2) were not entitled to any PTC for 2015, and (3) were responsible for repaying the excess of APTC paid on their behalf for 2015, $9,210, over the PTC to which they were entitled, zero. The Abregos' family size in 2015 was two. The Commissioner determined that the Abregos were ineligible for the PTC because their reported HHI, $63,332, exceeded the threshold of 400% of the Federal

**[*6]** poverty line (FPL), or $62,920, applicable for a family of two in California for 2015.[4] The Commissioner has since conceded that the Abregos are entitled to a self-employed health insurance deduction of $662, which lowers their actual 2015 HHI to $62,670, or 398% of the FPL.

## OPINION

I.  Burden of Proof

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933). The Abregos do not contend, and the evidence does not establish, that the burden of proof shifts to the Commissioner under section 7491(a) as to any issue of fact. With respect to the addition to tax under section 6651(a)(1), the Commissioner bears the burden of production, but the Abregos bear the burden of proof. See sec. 7491(c).

---

[4]For a family of two in California during 2015, the applicable FPL was $15,730. Annual Update of the HHS Poverty Guidelines, 79 Fed. Reg. 3593 (Jan. 22, 2014). See infra pp. 8-9.

**[*7]** II.     Analysis

The Commissioner has conceded that the Abregos are entitled to a self-employed health insurance deduction and, as a result, are eligible for some amount of PTC and entitled to an adjustment to their reported tax due.  In Part II(a) we review PTC eligibility and briefly explain why we concur with the Commissioner's concession.  In Part II(b) we determine the actual amount of PTC to which the Abregos were entitled for 2015.  In Part II(c) we explain how the Abregos must reconcile APTC with the amount of PTC to which they were actually entitled at the end of that year, and then we calculate the Abregos' excess APTC.

A.     The Abregos' PTC Eligibility

ACA sec. 1401, 124 Stat. at 213, created section 36B, which provides that taxpayers meeting certain requirements are eligible for the PTC, which subsidizes the cost of their health insurance purchased through a health insurance exchange.  See sec. 1.36B-2(a), Income Tax Regs.  A recipient can elect to receive PTC payments in advance (i.e., APTC) on the basis of an estimate of the amount of PTC for which the recipient will be eligible and whereupon monthly payments are made throughout the year directly from Treasury to the recipient's insurer.  ACA

**[*8]** sec. 1412, 124 Stat. at 231; <u>McGuire v. Commissioner</u>, 149 T.C. 254, 259-262 (2017) (discussing eligibility requirements).

Taxpayers are generally eligible for the PTC if their HHI is at least 100% but not more than 400% of the amount equal to the FPL for the applicable year. Sec. 36B(c)(1)(A). HHI is specifically defined for this purpose. Sec. 36B(d)(2)(A); <u>see also</u> sec. 1.36B-1(e)(1), Income Tax Regs. Eligibility is also contingent on enrollment in a qualified health plan. Sec. 36B(b)(2)(A).

HHI means the sum of the taxpayer's modified adjusted gross income (MAGI) plus the MAGI of family members: (1) for whom the taxpayer properly claims deductions for personal exemptions and (2) who are required to file a Federal income tax return under section 1. Sec. 36B(d)(2)(A); <u>see also</u> sec. 1.36B-1(e)(1), Income Tax Regs. An individual's MAGI is his or her AGI (within the meaning of section 62), increased by: (1) amounts related to foreign earned income and housing costs which were excluded from gross income under section 911, (2) tax-exempt interest, and (3) the amount of any Social Security benefits which were not included in gross income under section 86. Sec. 36B(d)(2)(B); <u>see</u> <u>also</u> 1.36B-1(e)(2), Income Tax Regs.

The FPL means the most recently published poverty guidelines (updated periodically in the Federal Register by the Secretary of Health and Human

[*9] Services (HHS) under the authority of the Community Opportunities, Accountability, and Training and Educational Services Act of 1998, Pub. L. No. 105-285, sec. 201, 112 Stat. at 2729 (codified at 42 U.S.C. sec. 9902(2) (2012))) in effect on the first day of the regular enrollment period for coverage by a qualified health plan for a calendar year. See sec. 36B(d)(3)(B). The first day of the regular enrollment period for tax year 2015 was November 15, 2014. 45 C.F.R. sec. 155.410(e)(1) (2014). As of November 15, 2014, the most recently published poverty guidelines had been published in the Federal Register on January 22, 2014. Annual Update of the HHS Poverty Guidelines, 79 Fed. Reg. 3593 (Jan. 22, 2014). According to those guidelines, the applicable FPL for a family of two in California during 2015 was $15,730. Id.

The Commissioner initially disallowed the Abregos' PTC because their reported HHI for 2015, $63,332, was greater than 400% of the FPL, $62,920. However, the Commissioner has conceded that they are eligible for the PTC because they are entitled to deduct self-employed health insurance costs, which reduce their HHI to less than 400% of the FPL.

Section 162(l) permits self-employed taxpayers to deduct all or a portion of their health insurance premiums paid during the taxable year for the taxpayer and certain members of the taxpayer's family. The deduction is limited to the

[*10] taxpayer's earned income from a trade or business with respect to which the health insurance plan is established. Sec. 162(l)(2)(A).

The Abregos reported $662 of business income on their Schedule C, and they paid $1,080.10 in plan premiums during 2015. Under section 162(l) their deduction is limited to their business income of $662 because their premiums exceeded their business income. The Abregos' overstatement of their income has a marked effect on their tax liability. The $662 deduction reduces their HHI from $63,332 to $62,670, which is 398% of FPL, or just below the 400% FPL cap of $62,920. Thus they are eligible to claim a $662 deduction under section 162(l) and in turn are entitled to some amount of PTC for their 2015 tax year.

B.    Calculating the Abregos' PTC Entitlement

Once it is determined that a taxpayer is eligible for the PTC, the precise amount of PTC must be calculated. Under section 36B(b)(2), a taxpayer's monthly PTC amount is the lesser of:

> (A)  the monthly premiums for such month for 1 or more qualified health plans offered in the individual market within a State which cover the taxpayer, the taxpayer's spouse, or any dependent (as defined in section 152) of the taxpayer and which were enrolled in through an Exchange established by the State under [section] 1311 of the * * * [ACA], or

**[*11]**          (B)  the excess (if any) of--

               (i)  the adjusted monthly premium for such month for the applicable second lowest cost silver plan with respect to the taxpayer, over

               (ii)  an amount equal to 1/12 of the product of the applicable percentage and the taxpayer's household income for the taxable year.

See also sec. 1.36B-3(d)(1), Income Tax Regs.  Section 36B(b)(2)(B)(ii) is commonly referred to as the taxpayer's "contribution amount."  See sec. 1.36B-3(d)(1)(ii), Income Tax Regs.  To calculate the contribution amount, one must determine the applicable percentage, which is based on a scale relative to the taxpayer's HHI as a percentage of the FPL.  Sec. 36B(b)(3)(A).  Thus, the applicable percentage is lower for a taxpayer whose HHI is 150% of the FPL, and the applicable percentage is higher for a taxpayer whose HHI is 400% of the FPL. The scale is indexed and published annually in a table by Treasury.  See Rev. Proc. 2014-37, 2014-33 I.R.B. 363.

The Abregos' HHI as a percentage of the FPL was 398%.[5]  The applicable percentage for a taxpayer whose HHI was 398% of the FPL for 2015 was 9.56%.

---

[5]HHI / FPL = \$62,670 / \$15,730 = 3.984 = 398%

**[\*12]** Id. sec. 5, 2014-33 I.R.B. at 364.  We can then calculate that the Abregos' contribution amount was $499.27.[6]

In turn we can calculate the excess, if any, of the benchmark plan premium (i.e., the Second Lowest Cost Silver Plan), over the Abregos' contribution amount. Here, there was an excess of $583.12 between the benchmark plan premium, $1,082.39, and their monthly contribution amount, $499.27.

As noted, the Abregos were entitled to the PTC in the amount that is the lesser of (1) their monthly plan premium, $1,029.01, or (2) any excess of the benchmark plan premium over the contribution amount, $583.12.  Thus, the Abregos were entitled a monthly PTC of $583.12, for a total of $5,831.20[7] during 2015.

In plain English, the amount of PTC a taxpayer is entitled to is calculated by comparing the premium for the plan the taxpayer selected to a PTC amount calculated against a benchmark plan premium.  If the actual plan premium is less than the calculated PTC amount, then the PTC will cover the entire plan premium.

---

[6]Contribution amount = (HHI × Applicable Percentage) / 12 Months = ($62,670 × .0956) / 12 = $499.27.  See sec. 36B(b)(2); see also sec. 1.36B-3(d)(1), Income Tax Regs.

[7]This amount represents the monthly PTC entitlement multiplied by 10 months, since the Abregos purchased the plan for only 10 of the 12 months during 2015.

[*13] If the plan premium is more than the calculated PTC amount, then the PTC will cover only the calculated PTC amount.

The Abregos' plan premium was $1,029.01. The difference between the benchmark plan premium, $1,082.39, and their monthly contribution amount, $499.27, was $583.12. Thus, their monthly PTC amount was $583.12 because it was less than their plan premium.

C.      Reconciling the Abregos' APTC and PTC

The Abregos elected to receive their PTC benefit in advance on the basis of their estimated eligibility. Sometimes circumstances change and a taxpayer's annual income might be more or less than the estimate that was used when the amount of APTC was determined. At the end of the year a taxpayer who received APTC is instructed by the IRS[8] to use Form 8962 to reconcile (1) the amount of

---

[8] See 2015 Instructions for Form 1040, U.S. Individual Income Tax Return, at 70. The instructions for line 69, Net Premium Tax Credit, are silent as to how Form 8962 might relate to an APTC:

**Line 69**

**Net Premium Tax Credit**

You may be eligible to claim the premium tax credit if you, your spouse, or a dependent enrolled in health insurance through the Marketplace. The premium tax credit helps pay for this health insurance. Complete Form 8962 to determine the amount of your

(continued...)

**[*14]** APTC (which was based on the estimated eligibility) the taxpayer received

during the year with (2) the amount of PTC to which the taxpayer is actually

entitled (which is based on HHI when the taxpayer files his or her annual income

tax return).  See sec. 36B(f)(2).  This is done when the taxpayer files his or her

annual income tax return.  The PTC computed on Form 8962 is based on a number

of factors, including the taxpayer's HHI and family size reported on the income

tax return.  If the amount of APTC is more than the amount of PTC to which the

recipient is ultimately entitled, the taxpayer owes the excess credit back to the

---

[8](...continued)
premium tax credit, if any.  Enter the amount, if any, from Form 8962,
line 26.  See Pub. 974 and the instructions for Form 8962 for more
information.

Following the cross-reference to the 2015 Instructions for Form 8962, Premium
Tax Credit (PTC), might lead a reader to this passage:

> **Advance payment of the premium tax credit (APTC).**  APTC is a
> payment during the year to your insurance provider that pays for part
> or all of the premiums for a qualified health plan covering you or an
> individual in your tax family.  Your APTC eligibility is based on the
> Marketplace's estimate of the PTC you will be able to take on your
> tax return.  If APTC was paid for you or an individual in your tax
> family, you must file Form 8962 to reconcile (compare) this APTC
> with your PTC.  If the APTC is more than your PTC, you have excess
> APTC and you must repay the excess, subject to certain limitations.
> If your PTC is more than the APTC, you can take the difference as a
> tax credit on your tax return, which will reduce your tax payment or
> increase your refund.

[*15] Government, which is reflected as an increase in tax.  See sec. 36B(f)(2)(A); Keel v. Commissioner, T.C. Memo. 2018-5, at *5-*6.

However, the increase to tax for excess APTC is limited to a maximum of $2,500 if the taxpayer's HHI is at least 300% but less than 400% of the FPL.  Sec. 36B(f)(2)(B)(i).  If a recipient is wholly ineligible for the PTC because the recipient's HHI was more than 400% of the FPL, then the entire amount of already paid APTC must be included as a tax liability on the recipient-taxpayer's tax return.  Sec. 36B(c)(1)(A), (f)(2)(B); sec. 1.36B-4(a)(4), Example (5), Income Tax Regs.

The Abregos received $9,210 in APTC.  At the end of the year it turned out that the Abregos were entitled to only $5,831.20 of PTC.  Generally, this would result in their owing the difference of $3,378.81 as an additional income tax liability.  But the Abregos' HHI was 398% of the FPL, meaning that their additional income tax liability is subject to the maximum limit of $2,500 for taxpayers whose HHI is at least 300% but less than 400% of the FPL.  See sec. 36B(f)(2)(B)(i); see also sec. 1.36B-4(a)(3)(ii) and (iii), (4), Example (15), Income Tax Regs.  Thus, $2,500 is all that the Abregos owe for 2015 as an additional income tax liability for excess APTC.

**[*16]** III.     Addition to Tax for Late Filing of a Return

Section 6651(a)(1) imposes an addition to tax for the late filing of a return absent a showing by the taxpayers of reasonable cause and a lack of willful neglect.  The penalty is calculated as 5% of the amount required to be shown as tax on the return for each month, not to exceed 25% in the aggregate.  Sec. 6651(a)(1).  Reasonable cause exists if the taxpayer exercised ordinary business care and prudence but nevertheless could not file or pay the tax when due.  United States v. Boyle, 469 U.S. 241, 245 (1985); see also sec. 301.6651-1(c)(1), Proced. & Admin. Regs.  Circumstances that may constitute "reasonable cause" include (among other things) unavoidable postal delays, the timely filing of a return with the wrong IRS office, the death or serious illness of a taxpayer or a member of his immediate family, a taxpayer's unavoidable absence from the United States, or reliance on erroneous advice from a competent tax adviser or IRS officer.  See Marrin v. Commissioner, 147 F.3d 147, 152 (2d Cir. 1998), aff'g T.C. Memo. 1997-24; McMahan v. Commissioner, 114 F.3d 366, 369 (2d Cir. 1997), aff'g T.C. Memo. 1995-547.  "[W]illfull neglect" means a "conscious, intentional failure or reckless indifference."  Boyle, 469 U.S. at 245.

[*17] The Abregos' 2015 Federal income tax return was due on April 15, 2016. See sec. 6072(a). They have conceded that they did not file their 2015 return until January 24, 2017, and at no time requested an extension. Accordingly, the Commissioner has carried his burden of production. See Higbee v. Commissioner, 116 T.C. 438, 447 (2001).

Mr. Abrego admits that he knew the filing deadline was April 15 but offered no explanation for their late filing except that they expected a refund. There is no legal basis for the position that filing late is excusable because a refund is expected; Mr. Abrego should be especially aware of this as a return preparer. His admission of a conscious decision to not file on time was willful neglect. Consequently, no reasonable cause exists, and we conclude that the Abregos are liable for the addition to tax under section 6651(a)(1).

IV.  Conclusion

In reaching our decision, we have considered all arguments made by the parties, and to the extent not mentioned or addressed, they are irrelevant or without merit.

To reflect the foregoing conclusions that the Abregos owe for 2015 additional income tax of $2,500 for excess APTC, are entitled to a deduction of $662 under section 162(1) for self-employed health insurance costs, and owe an

**[*18]** addition to tax under section 6651(a)(1), and to reflect the Commissioner's concessions as to the section 6662 penalty,

<u>Decision will be entered under</u>

<u>Rule 155</u>.