T.C. Summary Opinion 2021-13

UNITED STATES TAX COURT

CONNIE SUE HESTON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24551-18S.                    Filed May 19, 2021.

Connie Sue Heston, pro se.

<u>Vassiliki Economides Farrior</u> and <u>Philip A. Myers</u>, for respondent.

SUMMARY OPINION

PARIS, <u>Judge</u>:  This case was submitted pursuant to the provisions of

section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]

---

[1]Unless otherwise indicated, section references are to the Internal Revenue Code of 1986, as amended, in effect at all relevant times.  Rule references are to the Tax Court Rules of Practice and Procedure.

Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Petitioner, Connie Sue Heston, received advance Premium Tax Credits (APTC) during her 2017 tax year.[2]  See Patient Protection and Affordable Care Act (ACA), Pub. L. No. 111-148, sec. 1412, 124 Stat. at 231 (2010) (codified at 42 U.S.C. sec. 18082 (2012)).  That same year, she also received a lump-sum distribution through the Social Security Administration (SSA) for disability benefits relating to the 2015, 2016, and 2017 tax years.  Ms. Heston did not include the disability benefits as part of her modified adjusted gross income (MAGI)[3] on her 2017 tax return.  The Commissioner determined that Ms. Heston was required to include all of the lump-sum Social Security distributions received (including the back payments for 2015, 2016, and 2017) in the calculation of her MAGI.  As a result, he further determined that Ms. Heston's household income

---

[2]For the purposes of this Summary Opinion, the following will be used as defined terms throughout the opinion, listed in their order of introduction: (1) "Advance Premium Tax Credit" (APTC), (2) "Affordable Care Act" (ACA), (3) "Social Security Administration" (SSA), (4) "Modified Adjusted Gross Income" (MAGI), (5) "Household Income" (HHI), (6) "Premium Tax Credit" (PTC), (7) "Social Security Disability Insurance" (SSDI), (8) "Social Security Retirement" (SSR), (9) "Adjusted Gross Income" (AGI), (10) "Federal Poverty Line" (FPL).

[3]MAGI is specifically defined for the purposes of sec. 36B.  Sec. 36B(d)(2)(B).

(HHI) exceeded allowable limits for the Premium Tax Credit (PTC); that she had excess APTC of $1,275; that she was not entitled to the net PTC of $327 claimed on her return; and that she had a resulting total deficiency of $1,602 for 2017. Ms. Heston seeks redetermination of the Commissioner's determinations. The issues for decision are:

(1)    whether Ms. Heston received excess APTC payments of $1,275. The Court holds that she did; and

(2)    whether Ms. Heston is entitled to the net PTC of $327 claimed on her return. The Court holds that she is not.

## Background

The parties submitted this case for decision without trial under Rule 122. See Rule 122(a). Petitioner resided in Oklahoma when she timely filed her petition.

Before 2017 Ms. Heston had a pending claim for Social Security benefits under the Social Security Disability Benefits Insurance (SSDI) program for a disability from several years before. The claim had not yet been resolved at the beginning of 2017. In January 2017 Ms. Heston was receiving Social Security Retirement (SSR) benefits of $1,241 per month.

At or about the beginning of 2017 Ms. Heston enrolled in health insurance coverage through a health insurance marketplace, and monthly APTC payments were made on her behalf. See 42 U.S.C. sec. 18082. In 2017 the Department of the Treasury (Treasury) paid the plan eight full monthly installments of $1,073 and Ms. Heston paid $126.06, the difference between her monthly plan premium, $1,199.06, and the amount of the monthly APTC, $1,073. In September a partial APTC premium of $464.97 was paid, and Ms. Heston paid the balance of $54.62 of the partial monthly premium. During 2017 Treasury made APTC payments on Ms. Heston's behalf totaling $9,048.97, and Ms. Heston made plan premium payments totaling $1,063.10.

On September 2, 2017, the SSA notified Ms. Heston that her disability application had been retroactively approved and it was determined that she had become disabled on January 22, 2015. As a result, she received a lump-sum Social Security distribution of $12,532 on or about September 3, 2017. That sum represented SSDI of $4,454 for 2015, $4,844 for 2016, and $3,234 for 2017. Ms. Heston received monthly SSDI benefits of $1,645 in lieu of SSR benefits, for a total of $6,580 in SSDI benefits between September and December of 2017.

As a result of her SSDI award, Ms. Heston began receiving healthcare coverage through Medicare Part A and Part B beginning July 1, 2017. The first

time Ms. Heston was notified of her Medicare eligibility and enrollment was also in the SSA letter dated September 2, 2017. She was entitled to Medicare hospital insurance and medical insurance beginning July 2017, and SSA would deduct $134 each month from her Social Security benefits for medical insurance premiums beginning in July.

Despite Ms. Heston's eligibility for, and enrollment in, Medicare Part A by SSA retroactively in July, Treasury continued to pay Ms. Heston's marketplace plan for all of July, August, and the final, partial month of September. During that time Ms. Heston continued to be charged her portion of the premium.

At the end of the year, Ms. Heston received Form 1095-B, Health Coverage, for 2017 showing that she had Medicare coverage from July through December. Her health insurance company also sent Ms. Heston Form 1095-A, Health Insurance Marketplace Statement, for 2017 for insurance coverage from January to September. The Form 1095-A reported (1) the cost of the monthly plan premiums, (2) the monthly benchmark silver plan premium of $1,190.71 used to calculate the PTC, and (3) the monthly APTC payments Treasury paid to the plan.

Ms. Heston timely filed her Form 1040, U.S. Individual Income Tax Return, for 2017. She claimed a personal exemption only for herself and reported adjusted gross income of $8,500 consisting of taxable Individual Retirement Account

distributions from retirement accounts. On her Form 1040 she also reported $29,038 as the total sum of Social Security benefits she received but excluded the amount from her adjusted gross income (AGI) for 2017.[4] Ms. Heston's Form 1040 reported her AGI for 2017 as $8,500.

Filed with her Form 1040 was a Form 8962, Premium Tax Credit. The Form 8962 is used to reconcile the amount of APTC a taxpayer receives with the amount of PTC to which the taxpayer is ultimately entitled. On the Form 8962, Ms. Heston reported $20,192 as her MAGI[5] and the same amount as her HHI. She reported $327 as her net PTC.

On September 12, 2018, the Commissioner issued Ms. Heston a notice of deficiency determining that she received excess APTC during 2017 resulting in a deficiency of $1,602. That amount consisted of a corrected tax liability of $1,275 plus an adjustment to the refundable PTC of $327. The Commissioner's determination increased Ms. Heston's 2017 HHI to $37,538. That sum represents

---

[4]The $29,038 consists of Social Security income from the $9,926 in SSR benefits, the $12,532 lump-sum SSDI payments, and the $6,580 received in SSDI benefits between September and December 2017.

[5]On brief, the Commissioner noted that he was uncertain how Ms. Heston arrived at this number, and she has offered no further explanation.

Ms. Heston's 2017 AGI of $8,500, plus the $29,038 untaxed portion of her 2017 Social Security income.

Ms. Heston contends that because her HHI was below 400% of the Federal poverty line (FPL) for most of 2017, she should not be liable for any additional tax relating to the months before her receipt of the lump-sum Social Security payment, essentially arguing that her HHI should be determined on a monthly basis rather than annually. She also contends that it is a hardship to pay the deficiency.

Discussion

I.     Burden of Proof

The parties submitted this case for decision without trial under Rule 122(a). The fact that a case has been submitted under Rule 122(a) "does not alter the burden of proof, or the requirements otherwise applicable with respect to adducing proof, or the effect of failure of proof." Rule 122(b).

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933). Ms. Heston does not contend, and the evidence does not establish, that the burden of proof shifts to the Commissioner under section 7491(a) as to any issue of fact.

II.    Analysis

Despite determining a deficiency, the Commissioner does not dispute that Ms. Heston is eligible for some amount of PTC.  First, the Court reviews PTC eligibility and briefly explains why the Court agrees that Ms. Heston is entitled some amount of PTC.  See infra Part II.A.  Next, the Court determines the actual amount of PTC to which Ms. Heston was entitled for 2017.  See infra Part II.B.  Then the Court explains how Ms. Heston must reconcile APTC with the amount of PTC to which she was actually entitled, and then the Court calculates her excess APTC.  See infra Part II.C.  Finally, the Court addresses whether Ms. Heston was entitled to claim a net PTC of $327.  See infra Part II.D.

A.    Ms. Heston's PTC Eligibility

ACA sec. 1401, 124 Stat. at 213, created section 36B, which provides that taxpayers meeting certain requirements are eligible for the PTC.  The PTC subsidizes the cost of health insurance purchased through a health insurance exchange.  See sec. 1.36B-2(a), Income Tax Regs.  A recipient can elect to receive PTC payments in advance (i.e., APTC) on the basis of an estimate of the amount of PTC for which the recipient will be eligible and whereupon monthly payments are made throughout the year directly from Treasury to the recipient's insurer.

ACA sec. 1412, 124 Stat. at 231; McGuire v. Commissioner, 149 T.C. 254, 259-262 (2017) (discussing eligibility requirements).

Taxpayers are generally eligible for the PTC if their HHI is at least 100% but not more than 400% of the amount equal to the FPL for the applicable year. Sec. 36B(c)(1)(A). HHI is specifically defined for this purpose. Sec. 36B(d)(2)(A); sec. 1.36B-1(d) and (e)(1), Income Tax Regs. Eligibility is also contingent on enrollment in a qualified health plan. Sec. 36B(b)(2)(A).

For purposes of this calculation, HHI means the sum of the taxpayer's MAGI plus the MAGI of family members: (1) for whom the taxpayer properly claims deductions for personal exemptions and (2) who are required to file a Federal income tax return under section 1. Sec. 36B(d)(2)(A); sec. 1.36B-1(d) and (e)(1), Income Tax Regs. As pertinent here, an individual's MAGI is his or her AGI (within the meaning of section 62), increased by the amount of any Social Security benefits (as defined in section 86(d)) which were not included in gross

income under section 86.[6]  Sec. 36B(d)(2)(B); sec. 1.36B-1(e)(2), Income Tax Regs.

The FPL means the most recently published poverty guidelines.[7]  According to those guidelines, the applicable FPL for a family of one in Oklahoma during 2016 was $11,880.  See supra note 7.

_____

[6]SSDI lump-sum back payments have frustrated APTC recipients.  See Johnson v. Commissioner, 152 T.C. 121 (2019); Monroe v. Commissioner, T.C. Memo. 2019-41.  The concern is that had the SSDI payments been awarded promptly and therefore distributed in the applicable years, the recipients would have been eligible for the PTC.  In Johnson v. Commissioner, 152 T.C. at 127, the Court held that the sec. 36B requirement to include Social Security benefits in MAGI is unambiguous.  The sec. 36B(d)(2)(B) MAGI definition refers to Social Security benefits, as defined in sec. 86(d), which were not included in gross income under sec. 86.  Sec. 86(d)(1)(A) defines a "Social security benefit" as any amount received by the taxpayer by reason of "a monthly benefit under title II of the Social Security Act".  Title II of the Social Security Act provides for SSDI payments.  42 U.S.C. sec. 423 (2018).  The Court must conclude it was congressional intent that SSDI lump-sum back payments are required to be included in MAGI for purposes of the PTC.

[7]The FPL is updated periodically in the Federal Register by the Secretary of Health and Human Services (HHS) under the authority of the Community Opportunities, Accountability, and Training and Educational Services Act of 1998, Pub. L. No. 105-285, sec. 201, 112 Stat. at 2729 (codified at 42 U.S.C. sec. 9902(2) (2012))), in effect on the first day of the regular enrollment period for coverage by a qualified health plan for a calendar year.  See sec. 36B(d)(3)(B).  The first day of the regular enrollment period for 2017 was November 1, 2016.  45 C.F.R. sec. 155.410(e)(2) (2016).  As of November 1, 2016, the most recently published poverty guidelines had been published in the Federal Register on January 25, 2016.  Annual Update of the HHS Poverty Guidelines, 81 Fed. Reg. 4036 (Jan. 25, 2016).

This case turns on whether Ms. Heston improperly failed to include all of her Social Security benefits in the calculation of her MAGI, as the Commissioner alleges. See sec. 36B(d)(2)(B); sec. 1.36B-1(e)(2), Income Tax Regs. In Johnson v. Commissioner, 152 T.C. 121 (2019), the Court addressed whether MAGI includes all Social Security benefits received during a taxable year, irrespective of any section 86(e) election, for purposes of determining a taxpayer's eligibility for the PTC. In Johnson, the taxpayer received Social Security disability benefits in a lump-sum payment of $26,180, of which $11,902 was attributable to 2013 and $14,278 to 2014. Id. at 122. After receiving a notice of deficiency for excess APTC, Mr. Johnson filed an amended return, making a section 86(e) election. Id. at 123. The Court held that the entire $26,180 in Social Security disability benefits he received that year had to be included in the calculation of his MAGI for purposes of determining his PTC eligibility. See id. at 125-128. While Mr. Johnson's situation was sympathetic, his MAGI ultimately exceeded eligible levels.

Ms. Heston's situation is also sympathetic, but the Court must conclude that Ms. Heston's correct MAGI for 2017 comprises $8,500 (her AGI), increased by $29,038 (the total amount of Social Security benefits she received in 2017 which were not included in her adjusted gross income), for a total MAGI of $37,538. In

turn, Ms. Heston's HHI would also be $37,538.[8]  The Commissioner disallowed some of Ms. Heston's PTC because her correct HHI of $37,538 was 316%[9] of the FPL.  But because taxpayers are generally eligible for the PTC if their HHI is at least 100%, but not more than 400%, of the FPL for the applicable year, Ms. Heston is entitled to some amount of PTC for 2017.  See sec. 36B(c)(1)(A).

B.      Calculating Ms. Heston's PTC Entitlement

Once it is determined that a taxpayer is eligible for the PTC, the precise amount of PTC must be calculated.  Under section 36B(b)(2), a taxpayer's monthly PTC amount is the lesser of:

(A) the monthly premiums for such month for 1 or more qualified health plans offered in the individual market within a State which cover the taxpayer, the taxpayer's spouse, or any dependent (as defined in section 152) of the taxpayer and which were enrolled in through an Exchange established by the State under [section] 1311 of the * * * [ACA], or

(B) the excess (if any) of--

(i) the adjusted monthly premium for such month for the applicable second lowest cost silver plan with respect to the taxpayer, over

---

[8]This is so because she claimed a personal exemption only for herself and had no other family members for whom she claimed a deduction and who were required to file a Federal income tax return under sec. 1.  See sec. 36B(d)(2)(A); sec. 1.36B-1(e)(1), Income Tax Regs.

[9]HHI / FPL = $37,538 / $11,880 = 3.160 = 316%

> (ii) an amount equal to 1/12 of the product of the applicable percentage and the taxpayer's household income for the taxable year.

See also sec. 1.36B-3(d)(1), Income Tax Regs. Section 36B(b)(2)(B)(ii) is commonly referred to as the taxpayer's "contribution amount". See sec. 1.36B-3(d)(1)(ii), Income Tax Regs. To calculate the contribution amount, one must determine the applicable percentage, which is based on a scale relative to the taxpayer's HHI as a percentage of the FPL. See sec. 36B(b)(3)(A).

Ms. Heston's HHI as a percentage of the FPL was 316%. The applicable percentage for a taxpayer whose HHI was 316% of the FPL for 2017 was 9.69%. Rev. Proc. 2016-24, sec. 2, 2016-18 I.R.B. 677, 677. The Court can then calculate that Ms. Heston's contribution amount was $303.12.[10] This amount is more than the $126.06 of monthly premium that Ms. Heston actually paid.

In turn the Court can calculate the excess, if any, of the benchmark plan premium (i.e., the silver plan), over Ms. Heston's contribution amount. Here, using the corrected HHI amount, the excess of $887.59 would be between the benchmark plan premium, $1,190.71, and her monthly contribution amount, $303.12.

---

[10]Contribution amount = (HHI × Applicable Percentage) / 12 Months = ($37,538 × .0969) / 12 = $303.12. See sec. 36B(b)(2); sec. 1.36B-3(d)(1), Income Tax Regs.

As noted, Ms. Heston was entitled to the PTC in the amount that is the lesser of (1) her monthly plan premium ($1,199.06) or (2) any excess of the benchmark plan premium over the contribution amount ($887.59). Thus, Ms. Heston was entitled to a monthly PTC of $887.59.

As the Court stated in Abrego v. Commissioner, T.C. Memo. 2020-87, at *12-*13:

> In plain English, the amount of the PTC a taxpayer is entitled to is calculated by comparing the premium for the plan the taxpayer selected to a PTC amount calculated against a benchmark plan premium. If the actual plan premium is less than the calculated PTC amount, then the PTC will cover the entire plan premium. If the plan premium is more than the calculated PTC amount, then the PTC will cover only the calculated PTC amount.

The Court can conclude that Ms. Heston was eligible for $887.59[11] in monthly PTC, for a total of $7,620.31[12] during 2017 versus the $1,073 per month she actually received.

Ms. Heston appears to have had no notice of her Medicare eligibility or enrollment until at least September 2, 2017, when she received a letter from SSA

---

[11]Ms. Heston's plan premium was $1,199.06. The difference between the benchmark plan premium, $1,190.71, and her monthly contribution amount, $303.12, was $887.59. Thus, Ms. Heston's monthly PTC amount was $887.59 because it was less than her plan premium.

[12]For partial month calculations see sec. 1.36B-3(d)(1) and (2), Example (2), Income Tax Regs.; see also, for example, T.D. 9745, 2016-2 I.R.B. 256, 259.

notifying her, after the fact, that she had been enrolled in Medicare Part A and Part B as of July 1, 2017. Ms. Heston points to the retroactive approval and lump-sum payment in September 2017 as her primary argument regarding why she should not owe any additional tax. According to Ms. Heston, her APTC calculation was correct at the beginning of 2017 and she should not be penalized for the retroactive SSDI payment. But there have been no penalties determined by the Commissioner, and this opinion addresses merely the correct tax liability.

C.     Reconciling Ms. Heston's APTC and PTC

Ms. Heston elected to receive her PTC benefit in advance on the basis of her estimated eligibility. As was the case with her lump-sum SSDI benefits, sometimes circumstances change and a taxpayer's annual income might be more or less than the estimate that was used when the amount of APTC was determined. At the end of the year a taxpayer who received APTC is instructed by the IRS to use Form 8962 to reconcile (1) the amount of APTC (which was based on the estimated eligibility) the taxpayer received during the year with (2) the amount of PTC to which the taxpayer is actually entitled (which is based on HHI when the taxpayer files his or her annual income tax return). See sec. 36B(f)(2). This is done when the taxpayer files his or her annual income tax return. The PTC computed on Form 8962 is based on a number of factors, including the taxpayer's

HHI and family size reported on the income tax return. If the amount of APTC is more than the amount of PTC to which the recipient is ultimately entitled, the taxpayer owes back to the Government the excess credit, which is reflected as an increase in tax. See sec. 36B(f)(2)(A); Keel v. Commissioner, T.C. Memo. 2018-5, at *5-*6.

However, the increase in tax for excess APTC is limited to a maximum of $1,275 for a single taxpayer whose HHI was at least 300% but less than 400% of the FPL. Sec. 36B(f)(2)(B)(i) and (ii); Rev. Proc. 2016-55, sec. 3.06, 2016-45 I.R.B. 707, 711. If a recipient is wholly ineligible for the PTC because the recipient's HHI was more than 400% of the FPL, then the entire amount of already paid APTC must be included as a tax liability on the recipient-taxpayer's tax return. Sec. 36B(c)(1)(A), (f)(2)(B); sec. 1.36B-4(a)(4), Example (5), Income Tax Regs.

Ms. Heston received $9,048.97 in APTC. At the end of the day it turns out that she was entitled to only $7,620.31[13] of PTC. As a result, she has $1,428.66[14] in excess APTC liability. But she is eligible for relief under the maximum limitations. Her HHI was 316% of the FPL, meaning that her additional income

---

[13]See supra p. 14.

[14]$9,048.97 − $7,620.31 = $1,428.66

tax liability is subject to the maximum limit of $1,275 for single taxpayers whose HHI is at least 300% but less than 400% of the FPL. See sec. 36B(f)(2)(B)(i) and (ii); sec. 1.36B-4(a)(3)(ii) and (iii), Example (15), Income Tax Regs.; Rev. Proc. 2016-55, sec. 3.06. Because Ms. Heston's excess APTC ($1,428.66) is more than the maximum limitation ($1,275), the $1,275 limitation is all that Ms. Heston owes.

D.     Net PTC Claim

Ms. Heston claimed a net PTC of $327 on her 2017 tax return. The Court stated supra p. 16 that if the amount of APTC is more than the amount of PTC to which the recipient is ultimately entitled, the taxpayer owes back to the Government the excess credit, which is reflected as an increase in tax. See sec. 36B(f)(2)(A); Keel v. Commissioner, at *5-*6. There is a converse to that proposition: If the amount of APTC is less than the amount of PTC to which the recipient is ultimately entitled, the taxpayer can claim the excess as a credit ("net PTC"). Sec. 36B(a). The difference is reported on Form 1040, line 69, and results in either a reduction to the amount of tax owed or a refund.

As the Court has made clear, see supra Part II.C, Ms. Heston is in the former position of having excess APTC reflected as an increase in tax rather than in the

latter position of having net PTC.  Accordingly, the Court finds that Ms. Heston was not entitled to the claimed $327 net PTC.

III.    Conclusion

In reaching a decision, the Court has considered all arguments made by the parties, and to the extent not mentioned or addressed they are irrelevant or without merit.  The Court notes that to the extent Ms. Heston claims that paying the deficiency would be a hardship, she is free to submit to the IRS, at any time after the entry of this decision, for its consideration and possible acceptance, a collection alternative in the form of an installment agreement or offer-in-compromise, supported by the necessary financial information.

To reflect the foregoing,

Decision will be entered

for respondent.