# United States Tax Court

T.C. Memo. 2023-132

LIOR BLAS,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

LEO BLAS,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket Nos. 1031-17, 12485-20L.                    Filed November 6, 2023.

————

Lior Blas, pro se.[1]

*Amy Chang* and *Gregory M. Hahn*, for respondent.


## MEMORANDUM FINDINGS OF FACT AND OPINION

PUGH, *Judge*: We tried these two consolidated cases at our Anchorage, Alaska, remote trial session. The year in issue, 2014, is the same in both cases. The deficiency case, at Docket No. 1031-17, challenges the Internal Revenue Service's (IRS's or respondent's) notice of deficiency increasing petitioner's income tax liability for 2014 by the amount of the advance premium tax credit (APTC) benefit that was applied against his monthly health insurance premiums in 2014. The

---

[1] Petitioner filed his petitions in these consolidated cases using two separate first names—Lior and Leo—but confirmed at trial he goes by both names.

[*2] collection case, at Docket No. 12485-20L, challenges, under section 6330(d), respondent's notice of determination sustaining the proposed collection by levy of tax petitioner reported on his 2014 Form 1040, U.S. Individual Income Tax Return.[2] For the reasons summarized below we sustain respondent's determinations in both cases.

FINDINGS OF FACT

The facts we find are derived from the pleadings, trial testimony, documents admitted into evidence, stipulated facts and documents, and include the administrative record of the collection case. Petitioner resided in Alaska when he timely filed both petitions.

A. *Health Insurance Coverage*

In November 2013 petitioner was unemployed and without health insurance. Petitioner was concerned that he would be penalized if he did not have health insurance coverage for 2014; therefore, he applied for health insurance through the Federal Health Insurance Marketplace (Marketplace) website. On his application petitioner indicated that his household income was $15,000. He qualified for the maximum APTC benefit on the basis of the information he supplied on the application. Petitioner enrolled in the MODA Health Plan, Inc. (MODA), "Be Aligned Plan" with a coverage start date of January 1, 2014. The monthly premium for the Be Aligned Plan was $694 (a total of $8,328 for 2014). In December 2013 MODA sent petitioner a letter thanking him for choosing MODA. MODA also issued an insurance card to petitioner and mailed it to his home address in Chugiak, Alaska.

In December 2013 petitioner secured employment with MRI Contract Staffing (MRI). Petitioner was employed with MRI throughout 2014. MRI paid him wages of $82,000 over the course of 2014. Petitioner never reported this improvement in his financial situation to the Marketplace. Petitioner did not receive health insurance from MRI. Nor did he have Medicare or TRICARE coverage at any point during 2014.

Petitioner's Marketplace coverage with MODA continued throughout 2014. The APTC payments covered the full amount of his 2014 insurance premiums; therefore, MODA did not send him any

---

[2] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

[*3] billing statements regarding his 2014 health insurance coverage. MODA sent a billing statement in December 2014 notifying petitioner that a premium of $237 was due for insurance coverage beginning January 2015. MODA sent additional letters and billing statements to petitioner in 2015 seeking payment of outstanding insurance premiums for his 2015 health insurance coverage. On January 12, 2015, petitioner received from the Marketplace a Form 1095–A, Health Insurance Marketplace Statement, and a letter informing him that he was required to complete and file Form 8962, Premium Tax Credit (PTC), with his 2014 federal income tax return.

B.   *Tax Return and Examination*

Petitioner filed his 2014 Form 1040 on October 19, 2015. On it he reported adjusted gross income (AGI) of $83,742, consisting of wages ($82,000), taxable interest ($58), and other income ($1,884), less student loan interest ($200). He claimed one personal exemption and no dependents. Petitioner did not attach Form 8962 to his return. He reported a balance due of $3,690 on his return. Respondent assessed the tax shown, a section 6651(a)(2) addition to tax, and statutory interest.

On January 25, 2016, during the examination of petitioner's 2014 federal tax return, the IRS asked petitioner to complete and file Form 8962. Petitioner completed this form by reporting a family size of two,[3] a modified AGI of $83,942, and a value of $8,328 on line 11, column (f), Annual Advance Payment of PTC.

On November 22, 2016, respondent issued the notice of deficiency to petitioner for 2014. Respondent determined that petitioner received the benefit of APTC payments of $8,328, was not entitled to any PTC for 2014, and therefore was responsible for repaying the excess APTC paid on his behalf. At the time, petitioner had a balance due with respect to the tax he reported on his Form 1040.

C.   *Administrative Hearing*

On July 31, 2019, respondent sent petitioner a Letter 1058, Notice of Intent to Levy and Notice of Your Right to a Hearing (levy notice) regarding the tax petitioner reported on his Form 1040. Petitioner timely filed a request for an administrative hearing. Settlement Officer Simarjit Singh (SO Singh) was assigned petitioner's administrative

---

[3] Petitioner had a family size of one for 2014, but if we assume he had a family size of two our conclusions would not change.

[*4] hearing request. At the administrative hearing, petitioner told SO Singh that he was disputing the tax he reported on his 2014 Form 1040 in his deficiency case. SO Singh indicated that petitioner's deficiency case "was for the proposed underreporting [of] income that had no bearing [in] regards to [the] liability listed on the [levy notice]." Respondent issued petitioner the notice of determination on September 29, 2020.

D.    *U.S. Bankruptcy Court Proceedings*

At the same time petitioner has been seeking relief in this Court, he also has been pursuing relief in bankruptcy. Petitioner initially filed a petition with the U.S. Bankruptcy Court for the District of Alaska (bankruptcy court) on November 30, 2017. He filed that bankruptcy petition under 11 U.S.C. chapter 13 but his case was converted to a chapter 7 proceeding on February 13, 2019. The parties did not notify the Court promptly that it should stay the pending deficiency case pursuant to 11 U.S.C. § 362(a)(8). The bankruptcy court discharged petitioner's debt on May 31, 2019.

This Court tried the deficiency case on June 18, 2018, and on November 18, 2019, issued *Blas v. Commissioner*, T.C. Memo. 2019-152, and entered a decision for respondent. We subsequently withdrew the memorandum opinion and vacated the decision because they were based on evidence from a trial that occurred during the automatic stay.

Because the automatic stay was lifted when the bankruptcy court discharged petitioner's debt on May 31, 2019, the proceedings before this Court could and did resume, and we tried both cases remotely. But during posttrial briefing, on August 15, 2022, petitioner again filed a petition in the bankruptcy court under 11 U.S.C. chapter 13. As a result, all proceedings again were automatically stayed pursuant to 11 U.S.C. § 362(a)(8). Petitioner's newest bankruptcy case was dismissed on March 2, 2023, once again lifting the stay of proceedings in this Court.

OPINION

I.    *Deficiency Case*

A.    *Burden of Proof and Production*

First we address the burden of proof in this case. Ordinarily, the burden of proof in cases before the Court is on the taxpayer. Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). Generally, under section

[*5] 7491(a)(1), "[i]f, in any court proceeding, a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer for any tax imposed by subtitle A or B, the Secretary shall have the burden of proof with respect to such issue." *Higbee v. Commissioner*, 116 T.C. 438, 442 (2001). Petitioner has not presented credible evidence sufficient to shift the burden of proof to respondent as to any relevant factual issue under section 7491(a).

We now turn to the burden of production. Petitioner argues that respondent must produce evidence that the APTC payments were made on his behalf. Respondent disagrees and contends that nothing in the Code places the burden on him to produce affirmative proof of the APTC payments. Specifically, respondent argues that he does not bear the burden of production under section 6201(d).

But the resolution of this case does not hinge on which party has the burden of proof or production. At trial petitioner admitted that, at the very least, he "inquired" about his eligibility for insurance. The record includes a letter to petitioner from MODA indicating that he was insured as of December 2013, and a copy of his insurance card. The record also includes a Form 1095–A listing the PTCs attributable to him to cover his insurance for 2014. Viewed together, this evidence constitutes sufficient proof that he acquired coverage through the Marketplace for which advance payments of his insurance premiums were made.

Petitioner contends that proving the absence of something (in his case, payments for health insurance coverage) is not possible. We agree that proving the absence of something is not always easy, but we need not debate about how one might prove the absence of something because respondent has submitted relevant admissible evidence of payments made on petitioner's behalf.[4]

B.    *Advance Premium Tax Credit*

Section 36B allows a PTC to subsidize the cost of health insurance purchased through a health insurance exchange by taxpayers meeting certain statutory requirements. *See* Treas. Reg. § 1.36B-2(a). The PTC is generally available to individuals with household income between 100% and 400% of the federal poverty line amount for the year at issue.

---

[4] At trial petitioner repeatedly raised relevance objections which we said were best considered in the context of the entire record. Our analysis demonstrates the relevance of, and weight that should be accorded, that evidence.

**[\*6]** § 36B(c)(1)(A), (d)(3)(B); *see also McGuire v. Commissioner*, 149 T.C. 254, 259 (2017). The federal poverty line amount is established by the most recently published poverty guidelines in effect on the first day of the open enrollment period preceding that tax year. Treas. Reg. § 1.36B-1(h). Notably, the applicable federal poverty line for a family of one in Alaska is $14,350 and 400% of that is $57,400. *See* Annual Update of the HHS Poverty Guidelines, 78 Fed. Reg. 5182, 5183 (Jan. 24, 2013).

Recipients can choose to receive the PTC benefits in advance, in which case the payments are made directly to the insurer. *See* § 36B; *McGuire*, 149 T.C. at 260. At the end of the year, a taxpayer who received an APTC must reconcile the amount of the PTC already received with the entitlement amount. § 36B(f)(2). The taxpayer may do so by completing a Form 8962 and filing it with his federal tax return. If the APTC is greater than the entitlement amount, the taxpayer must repay the excess APTC, reflected as an increase in tax. § 36B(f)(2)(A); *see also Keel v. Commissioner*, T.C. Memo. 2018-5, at \*6.

Petitioner elected to receive the APTC benefit. He qualified for the APTC on the basis of his representation on his Marketplace application that his household income was $15,000. The 2014 monthly premiums for the Be Aligned Plan—totaling $8,328 for the year—were paid on petitioner's behalf. He secured employment with MRI, which paid him wages of $82,000 in 2014. His household income for 2014 therefore exceeded 400% of the federal poverty line amount for the year at issue ($57,400); consequently, he is not entitled to any of the APTC he received. Because petitioner is responsible for repaying the excess APTC paid on his behalf,[5] we sustain respondent's deficiency determination.

II.    *Collection Case*

A.    *Standard of Review*

Where the amount of a taxpayer's underlying tax liability is properly at issue in a collection case, we review the IRS's determination de novo. *Goza v. Commissioner*, 114 T.C. 176, 181–82 (2000). Section 6330(c)(2)(B) permits taxpayers to challenge the existence or amount of

---

[5] Petitioner also raised an alternative argument that even if he had a deficiency resulting from the APTC he had offsetting deductions. But he did not substantiate any deductions.

**[\*7]** their underlying tax liability only if they did not receive a notice of deficiency or otherwise have a prior opportunity to contest that liability.

Where the underlying tax liability is not properly at issue, we review the IRS's determinations for abuse of discretion. *Hoyle v. Commissioner*, 131 T.C. 197, 200 (2008), *supplemented by* 136 T.C. 463 (2011); *Goza*, 114 T.C. at 182. Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. *See Murphy v. Commissioner,* 125 T.C. 301, 320 (2005), *aff'd*, 469 F.3d 27 (1st Cir. 2006). The burden is on the taxpayer to prove that the settlement officer abused her discretion. Rule 142(a); *see Woodral v. Commissioner*, 112 T.C. 19, 23 (1999).

In deciding whether a settlement officer abused her discretion in sustaining the collection action we consider whether she (1) properly verified that the requirements of any applicable law or administrative procedure have been met; (2) considered any relevant issues the taxpayer raised; and (3) determined whether "any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the [taxpayer] that any collection action be no more intrusive than necessary." *See* § 6330(c)(3).

B.    *Underlying Liability*

The parties agree that petitioner's underlying liability for 2014 is properly at issue in the collection case. Specifically, respondent points out that at the administrative hearing petitioner informed SO Singh that he was disputing the tax he reported on his 2014 Form 1040 in his deficiency case. SO Singh did not think the underlying liability was at issue; therefore respondent states that petitioner attempted to raise the issue in the administrative hearing but was deprived of the opportunity to discuss the issue further. Accepting that petitioner's underlying liability is properly at issue, we review the IRS's determination de novo. *See Goza*, 114 T.C. at 181–82. Petitioner, however, offered no evidence at trial relating to his underlying tax liability as he reported it, and we see nothing to contradict the tax liability he reported on his 2014 Form 1040 but did not pay.[6]

---

[6] The IRS received a payment of $2,198.75 related to petitioner's chapter 7 bankruptcy proceeding. Petitioner's balance due from the tax he reported on his 2014 Form 1040 was reduced accordingly. In our Order dated April 8, 2022, we explained that partial payment does not require us to dismiss the collection action.

**[\*8]** C.  *Nonliability Issues*

Petitioner identified no issues with the actions of SO Singh other than the argument we rejected, that the IRS could not proceed with collection because of his bankruptcy proceeding.[7] Our own review of the administrative record identified no abuse of discretion by SO Singh. The record shows that SO Singh properly verified that the requirements of applicable law and administrative procedure were followed, considered relevant issues raised by petitioner, and properly balanced the need for efficient collection of taxes with petitioner's legitimate concern that the collection action be no more intrusive than necessary. *See* § 6330(c)(3). Consequently, we uphold respondent's determination.

We have considered all arguments made and, to the extent not mentioned above, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

*Appropriate decisions will be entered.*

---

[7] At trial petitioner reiterated arguments he made in various filings; namely, that the collection action was blocked by his bankruptcy. We rejected these arguments in our Order dated April 15, 2022. (This Order mistakenly identified July 31, 2019, as the date of assessment instead of the date the levy notice was issued; this does not affect our conclusion that the IRS could proceed with collection.) We do so again now. When the IRS issued the levy notice on July 31, 2019, the automatic stay related to petitioner's chapter 7 bankruptcy proceeding was no longer in effect. In sum, the IRS was not barred from proceeding, nor are we.